## THE STAR CUTTER COMPANY

### v.

### BYRON L. SMITH, RECEIVER.

*Banks—Insolvency—Assets—Special Deposit.*

1. A trust is revocable where the beneficiary has never assented to, or had notice thereof.

2. The holder of a check can not refrain from presenting the same, and recover in an action at law the amount thereof.

3. A special deposit does not pass as the asset of an insolvent bank but may be recovered in full.

[Opinion filed July 9, 1890.]

APPEAL from the Superior Court of Cook County; the Hon. HENRY M. SHEPARD, Judge, presiding.

Messrs. WILLIAMS, HOLT & WHEELER, for appellant.

Every element of a deposit in the ordinary course of business is lacking in the present case. The deposit was not made by the person whose check it was designed to take up, and neither the latter nor the depositor was a customer of the bank. It was made with the paying teller and not with the receiving teller, and this for the express reason that the receiving teller would not take it because the account had been closed. The paying teller refused to take it as a deposit at all, but gave permission to "leave it there" for the particular

Star Cutter Co. v. Smith.

purpose designated. It was not entered upon the pass-book, but was receipted for in a wholly unusual way. It was not passed to the credit of Buckingham, or ever entered in any form on the books of the bank. It was indorsed with a memorandum by the paying teller, showing the peculiar circumstances under which it had been received, and the purpose for which it was held. It was not sent forward for collection in the ordinary course of business, but was held for nearly five months, and then put in the form of a certificate of deposit. If this is a deposit in the ordinary course of business, we shall have to revise all our ideas as to what constitutes an extraordinary transaction.

It was suggested in argument that the proceeds of this check were mingled with the other funds of the bank, and therefore under the authorities there could be no recovery in full. We have, perhaps, sufficiently indicated the answer to this proposition. The particular paper which was left with the paying teller was not treated as similar paper is treated in the ordinary course of business. It is doubtless true that if any specific bank bills were received in payment of this check on the 11th of May, they were mingled with other bank bills and paid out in the current operations of the bank. It is more probable that no bills were ever received, but that this check was paid through the clearing house, by the system of offsetting debits and credits which prevails there. But so far as it was in the power of the Traders' Bank to keep this check and its proceeds separate from the ordinary funds, it was kept separate. It never appeared on any book of the bank, but existed in the form of the certified check in the paying teller's drawer until May 11th, and after that time in the form of a certificate of deposit.

Messrs. WALKER & EDDY, for appellee.

"SPECIAL DEPOSIT.—A special deposit is where the whole contract is that the thing deposited shall be safely kept, and that identical thing returned to the depositor." Morse on Banks and Banking, Sec. 183; State v. Clark, 4 Ind. 316; Keene v. Collier, 1 Met. (Ky.) 417.

"SPECIFIC DEPOSIT.—When money is deposited to pay a specified check, drawn or to be drawn, or for any purpose other than mere safe keeping, or entry on general account, it is a specific deposit, and the title remains in the depositor until the bank pays the person for whom it is intended, or promises to pay it to him."

" A deposit of money to pay a specified note, or of a bill to be collected, or of paper or goods as collateral security, or of bonds in order that the bank may act as agent to collect the interest for the owner, is a specific deposit." Morse, Banks, Sec. 185.

"A DEPOSIT IS PRESUMED TO BE GENERAL.—A deposit is presumed to be general unless expressly made special or specific." Morse, Banks, Sec. 186; Neely v. Rood, 54 Mich. 134; Ruffin v. Commissioners, 69 N. C. 498; In re Franklin Bank, 1 Paige, 249; Brahm v. Adkins, 77 Ill. 263.

"The rule is, a deposit is general unless the depositor makes it special, or deposits it in some particular capacity; and, where the deposit is general, there is an implied undertaking on the part of the bank to restore, not the same funds, but an equivalent sum, whenever it should be demanded." Ward v. Johnson, 95 Ill. 215.

And "wherever the bank has a right to mingle the funds deposited with its own and treat them as a debt due from it, even though the money may be a trust property, the deposit is general." Morse, Banking, Sec. 186; Vail v. Newark Savings Inst., 32 N. J. Eq. 627.

" In the absence of evidence that it is the bank's duty by agreement, express or clearly implied, to keep the funds and their investment separate, it must be treated as a general deposit." Morse, Banking, Sec. 186.

"It is the custom of banks upon receiving money for a specific purpose, as to pay a note, to mingle the funds with their own, and to pay the note at the proper time, just as they would a check; the funds are not kept separate. There is no practical difference between such a deposit and a general deposit, and it seems clear that the bank should be held to the same liability as for a general deposit." Morse, Banking, Sec. 210, and authorities cited.

" When money is delivered to a bank for the expressed purpose of paying a note, the relation of principal and agent is created, not that of debtor and creditor; the deposit is a trust fund, and in case of an assignment for creditors, this fund does not pass as assets of the bank, but may be recovered in full. But if the money has been mingled with the funds of the bank, as is usually the case, we do not see any reason why the depositor should be preferred above any other. He has trusted the bank, so have the others. See the principle in the Illinois Trust and Savings Co. Case, 21 Blatch. 275."

Moran, J: The Star Cutter Company had a factory at Lowell, Michigan, and a salesroom in Chicago. One Buckingham was indebted to the company, and from time to time gave it checks drawn on the Traders' Bank of Chicago, and it frequently happened that he did not have on deposit in such bank sufficient funds to meet the check given, and when that occurred the Star Cutter Company would deposit in said bank, to Buckingham's credit, money to meet the particular check outstanding. The bank became dissatisfied with Buckingham's method of doing business, requested him to take away his account, and his bank book was written up and showed a balance to his credit of some $3.

On December 29,1887,the president of the Star Cutter Company received at Chicago a telegram from the secretary at Lowell, stating that the said company had used Buckingham's check on Traders' Bank for $1,000, and requested him to cover it. Thereupon the president drew the check of the Star Cutter Company, payable to the order of J. L. Short, a clerk of the company, for $1,000, which check the clerk procured to be certified by the First National Bank, and took to the Traders' Bank, and asked permission of the paying teller to deposit it to the credit of Buckingham, but the teller would not allow it to be so deposited, but learning that it was for the purpose of paying a check, which Buckingham had drawn upon the bank, told the clerk that if he wanted to leave the check he could leave it with him, indorsed, payable to the Traders' Bank, and he would give a receipt for it. To

this the clerk assented. The teller then pinned a memorandum to the check, stating that it was left by J. L. Short to take up a check of R. D. Buckingham, for $1,000. Said memorandum and the check was carried by the said teller in his cash from December 29, 1887, until May 10, 1888, when he sent the check forward through the clearing house for collection, and in its place caused a certificate of deposit to be made out, reciting that "Traders' Bank had deposited in this bank $1,000, payable to the order of...................," etc

On the back of this certificate the teller indorsed the following: "Check of the Star Cutter Company, left by J. L. Short to take up a check of R. D. Buckingham for $1,000, December 29, 1887." The Buckingham check was never, after December 29, 1887, presented to the Traders' Bank, and it is not shown what became of it, nor does it satisfactorily appear that it was ever in fact used by the Star Cutter Company. The books of the said company were in confusion, and it is possible, but does not appear from the proof, that said check was presented to the bank and thrown out before the deposit was made to meet it, and was otherwise taken care of by the Star Cutter Company. However that may be, it has never turned up and no one has given any account of it.

In October, 1888, the Traders' Bank failed, and the certificate of deposit, indorsed as above described, went into the hands of appellee as receiver, with the assets of the bank. The Star Cutter Company obtained an assignment of all Buckingham's rights and interest against the bank, and filed a petition asking to have said $1,000 paid over to it by the receiver.

On the hearing the court ordered that petitioners be paid dividends on the said deposit, treating it as a general deposit, but refusing to treat said deposit as special, and to direct its payment as such.

The first question is, whether said deposit was a special deposit by the Star Cutter Company. That it was such we think is clear. The clerk, Short, was willing, it is true, to make a general deposit of the money to the credit of Buckingham, but the bank, through its agent, refused to receive

such deposit, but offered to take it for the specific purpose of taking up a check of Buckingham for $1,000, and on the clerk's agreeing to leave it for that specific purpose, it was earmarked by an indorsement to identify it as being deposited and held for that purpose, and such marking or identification was attached to the fund when the money was drawn upon the check, and took the form of a certificate, and was retained upon it till it came into the hands of the receiver. The object and intent of placing the money in the bank was, so far as the Star Company was concerned, to meet a particular check which it was understood had been used by its agent, and the bank was particular to confine its agency in the matter and the relation of the parties to the transaction, to that specific and definite purpose and no other. While, because of the lack of particular description of the Buckingham check intended to be covered, the bank might be justified in applying the fund in payment of the first Buckingham check for the amount of $1,000 presented, it having no notice that such was not the check intended to be provided for, it is very clear that the bank could not legally split up the fund and use it to discharge a Buckingham check for a less amount. The fund was not in the bank for Buckingham's general account, and could not be dealt with in any other manner than as a specified trust fund, to be applied to the particular purpose for which only the bank consented to receive it.

"When the very money or other thing deposited is to be restored, or is given to the bank for some specified and particular purpose, as to pay a certain note, or to act as agent for the collection of bills or notes deposited, the property does not pass from the depositor. When money is delivered to a bank for the express purpose of paying a note, the relation of principal and agent is created, not that of debtor and creditor. The deposit is a trust fund, and in case of an assignment for creditors, this fund does not pass as assets of the bank, but may be recovered in full." 2 Morse on Banks & Banking, Sec. 567; People v. City Bank of Rochester, 96 N. Y. 32.

It is suggested that if the deposit was special, then it became the property of the *cestui que trust*, the holder of the

Buckingham check, and that the Star Cutter Company has no right to receive the fund.

It is a fair conclusion from the evidence, and the known general course of business, that there is now no holder of the Buckingham check, if there ever was one, other than the Star Cutter Company. But if there was such a holder, he has never presented the check, and he would not have a complete right to the funds deposited to meet the check without presentation. He certainly has no right of action at law.    Munn v. Burch, 25 Ill. 35.

While the effect of the deposit made by the Star Cutter Company was to create a trust, the intended beneficiary has never assented to, or so far as shown, had any notice of the trust.    Under such circumstances the trust is revocable.

It is like the case of a creditor who, without being insolvent, vests property in trustees to pay his debts; " the trustees are mere *mandatories,* and the deed confers no right upon the creditors who are neither parties nor privies, and the debtor may at any time at his pleasure revoke or vary the trust or call for the retransfer of the property." If the trustee had done anything to charge him in execution of the trust, the question would be different.    See Lewin on Trusts, 516.

Here, as we have seen, no property vested in the bank as trustee.    It was a mere agent; and the intended beneficiary had no notice.    So that under the strict rule that obtains in cases of assignment for the benefit of creditors, the trust created might be revoked.    2 Perry on Trusts, Sec. 593.

Our conclusion is, therefore, that the petitioner is entitled to be paid the entire fund held as a special deposit by the bank, and now in the hands of a receiver, and the order of the Superior Court will be reversed and the case remanded with directions to enter an order directing the receiver to pay to the petitioner the sum of $1,000 without diminution, and to pay a dividend upon such sum as Buckingham has standing to his credit in said Traders' Bank on general account.

*Reversed and remanded.*