STATE OF NEBRASKA v. STATE BANK OF WAHOO.

FILED DECEMBER 4, 1894. No. 5962.

Insolvent State Banks: RELATION OF BANKER AND DEPOS-
ITOR: FRAUD OF CASHIER: PREFERRED CLAIMS: CERTIFICATE
OF DEPOSIT: TRUST FUNDS: PRACTICE. Kingsley loaned Baum
$2,000, secured by a mortgage on real estate. Ladenburger had
sold the real estate to Baum and he borrowed this money to pay
for it. The cashier of the Bank of Wahoo negotiated the loan
for Baum, and by agreement between Baum, Ladenburger, and
the cashier, the latter was to receive from Kingsley the proceeds
of the loan and pay the same over to Ladenburger. About No-

vember 1, 1892, the cashier received the draft and collected it, but on Ladenburger's demanding the money, falsely alleged there was a defect in the title to the real estate, and claimed the right to hold the money until such defect should be cured. Ladenburger consented to this. December 31, 1892, the cashier mailed to Ladenburger a certificate of deposit, reciting that the latter had deposited in the bank the Kingsley money payable to the order of himself "in person," and on return of the certificate indorsed "when the land title to Baum is straightened out." January 23, 1893, the bank was found to be insolvent, and at the suit of the attorney general placed in the hands of a receiver. Ladenburger demanded of the receiver the payment of his claim in full as a preferred claim. *Held*, (1) That the controlling test question in the case is, was Ladenburger a voluntary creditor of the bank? Was the relation subsisting between them that of ordinary depositor and banker? (2) That the agreement of the parties that the cashier should negotiate the loan and receive the proceeds thereof for Ladenburger did not make the latter a voluntary creditor or depositor of the bank; (3) that one may involuntarily become the creditor of another, but from the very nature of things the relation of banker and depositor can be created only by consent of both parties; (4) that if A, without the knowledge of B, deposits a sum of money in a bank to the latter's credit, then, until B shall be informed thereof, and expressly or by implication recognize the deposit as such, the bank will hold such money in trust for B, and not as his banker; (5) that the false representation of the cashier, that there was a defect in the title to the real estate, and that he was holding Ladenburger's money until such defect should be cured, was a fraud on the latter, and his conduct in permitting the cashier to retain the money for the purpose alleged should not be construed into an intention or a consent on his part to become a depositor of the bank; (6) that the certificate of deposit was, under the circumstances, nothing more than an acknowledgment in writing that the bank held the proceeds of the Kingsley loan for Ladenburger and would pay the same to him when the title to the real estate should be perfected, and the mere holding of this certificate of deposit by Ladenburger was not of itself sufficient evidence to establish that he thereby recognized himself as a depositor of the bank; (7) that to make one a depositor of a bank, and in case of its insolvency to limit such person's rights against the assets thereof to those of an ordinary creditor, it must appear that such person became a depositor of such bank voluntarily; (8) that the title to the money received by the bank from Kingsley for Ladenburger was held in trust by the bank for him,

61

and the title to such money did not pass to the receiver; (9) that when a fund is once impressed with the character of a trust, such trust character continues until changed by the consent of the beneficiary; (10) that Ladenburger was entitled to have his claim paid as a preferred claim.

ORIGINAL action to wind up the affairs of the State Bank of Wahoo, Nebraska, under the banking law of 1889. Upon demand of Moriz Ladenburger for payment of his claim in full from the assets of the bank the receiver petitioned the court for instructions. *Claim preferred and payment ordered.*

*Good & Good*, for claimant.

*George H. Hastings, Attorney General*, for the receiver.

RAGAN, C.

About October 1, 1892, Moriz Ladenberger sold some real estate, situate in Saunders county, Nebraska, to John Ladenburger and Fritz Baum (hereinafter called "the purchasers"). In order to make payment in full for the real estate the purchasers applied to W. H. Dickinson, the proprietor and cashier of the State Bank of Wahoo, a banking institution situate in said county, to procure for them a loan of $2,000, to be secured by a mortgage on said real estate. Dickinson undertook to procure one Kingsley to make the loan. The purchasers executed the proper mortgage, which was duly recorded, and by agreement between them and Dickinson and Moriz Ladenburger, the $2,000, when advanced by Kingsley on the mortgage, Dickinson was to turn over to Moriz Ladenburger in payment of the balance due him from the purchasers of his real estate. About November 1, 1892, Dickinson received from Kingsley a draft for $2,000, being the loan made by the latter to the purchasers. Dickinson appears to have collected the money on this draft, or cashed it, about the time he re-

ceived it.  Moriz Ladenburger, soon after the receipt of the draft by Dickinson, demanded of him the money which Kingsley had loaned the purchasers, but Dickinson refused to pay over the money, alleging as a ground therefor that there was some defect in the title of the real estate mortgaged to Kingsley, and claimed the right to hold said money until such defect should be cured, and for such alleged purpose did retain said money, Moriz Ladenburger, it would seem, consenting thereto.  It does not appear, however, that Moriz Ladenburger knew at this time that the money which Kingsley had furnished the purchasers was sent to Dickinson in a draft; and, as a matter of fact, there was no defect in the title to the real estate.  Moriz Ladenburger, during the month of November, 1892, frequently demanded of Dickinson this money.  Dickinson refused to pay it over, still alleging that the title to the real estate had not been perfected.  On December 31, 1892, Dickinson wrote and mailed to Moriz Ladenburger a letter as follows :

"WAHOO, NEB., Dec. 31, 1892.

"*Moriz Ladenburger, Morse Bluff, Neb.*—DEAR SIR : We went up to the court house this afternoon to pay the taxes on your land, but the treasurer's deputy was so busy that they would not get out the receipts to-day and said it possibly would be a week or two before they could do so.  That being the case, we thought that you would not want to be out of the interest on your money any longer, so now inclose you certificate of deposit for $1,900, drawing eight per cent interest, which you will please hold until the matter is closed up.  We have retained $100 to pay the taxes and other expenses with.  Whatever balance there may be after these are paid we will turn over to you in cash when all is settled.  Hoping that this will be satisfactory to you for the present, we remain yours truly,

"W. H. DICKINSON, *Cash.*"

The certificate of deposit alluded to in the letter and

which accompanied the same was·in words and figures as follows :

"$1900. STATE BANK OF WAHOO,

"WAHOO, NEB., Dec. 31, 1892.

"Moriz Ladenburger has deposited in this bank nineteen hundred and no 100 dollars, payable to the order of himself in person on the return of this certificate properly indorsed when the land title to Ladenburger & Baum is straightened out. With eight per cent interest from date.

"No. 2372. W. H. DICKINSON, JR., *Cash.*"

It appears that on January 3, 1893, Dickinson charged to Moriz Ladenburger on the books of the bank $10 for abstract of title to the land mortgaged; on the 7th of January, 1893, $42.20, for taxes paid on the land; and as the so-called certificate of deposit was for only $1,900, $47.80 remain unaccounted for. This sum Dickinson probably charged Ladenburger for the privilege of robbing him. On the 23d of January, 1893, the Bank of Wahoo was discovered to be insolvent, and at the suit of the attorney general brought in this court was placed in the hands of a receiver. Dickinson never paid any part of the money to Moriz Ladenburger received for him from Kingsley, and Moriz Ladenburger demanded of the receiver the payment of said sum of money in full as a preferred claim out of the assets in his hands, and the receiver has petitioned this court for instructions in the premises.

The controlling, the test question in the case is, was Moriz Ladenburger a voluntary creditor of this bank? Was the relation subsisting between them that of an ordinary depositor and banker? When the $2,000 draft was received from Kingsley by Dickinson, the cashier, the bank had and held it as agent and in trust for Moriz Ladenburger. It had received the draft for the express purpose of turning it over to him. When the bank collected the money on the draft it held such money as agent and in trust for Moriz Ladenburger. The agreement of the parties that

the cashier should negotiate the loan and receive the pro-
ceeds thereof for Moriz Ladenburger by no means made
the latter a voluntary creditor or depositor of this bank.
One may involuntarily become the creditor of another, but
from the very nature of things the relation of banker and
depositor can be created only by consent of both parties.
If A, without the knowledge or consent of B, deposits a
sum of money in a bank to the latter's credit, then, until
B'shall be informed thereof and expressly or by implica-
tion recognize the deposit as such, the bank will hold such
money in trust for B, and not as his banker.  The repre-
sentations made to Moriz Ladenburger by the cashier that
he was holding the money received from Kingsley until
the title to the land should be perfected was false and a fraud
on Moriz Ladenburger, and the latter's conduct in permitting
the cashier to retain the money for the purpose and on the
grounds alleged should not be construed into an intention or
a consent on his part to become a depositor of this bank, nor
did the issuance by Dickinson of the certificate of deposit and
its delivery to Moriz Ladenburger modify the relations exist-
ing between Ladenburger and the bank.  True, the certificate
of deposit recites that Moriz Ladenburger had deposited
$1,900 in the bank, but this was not true.  Dickinson, if
any one, had done this, and that without the knowledge or
consent of Moriz Ladenburger.  It was not within the
power of this cashier to make Moriz Ladenburger a de-
positor, as such, in this bank without his consent.  But
Moriz Ladenburger held this certificate of deposit some
twenty days before the failure of the bank ; and it is argued
here that he thereby became an ordinary creditor or depos-
itor thereof.  Under the circumstances this certificate of
deposit was nothing more than an acknowledgment in writ-
ing that the bank held the money, the proceeds of the
Kingsley loan.  The certificate of deposit recites that the
money will be paid to Moriz Ladenburger in person when
the title to the land has been perfected.  This was simply

putting in writing the reasons and purposes Dickinson alleged for retaining this money, and in which, as already stated, Moriz Ladenburger was induced to acquiesce by the false representations of the cashier. The letter in which the certificate of deposit was sent to Moriz Ladenburger informed him that it would be a week or two before they could straighten up the title to the land. It does not appear that Moriz Ladenburger, prior to the receipt of this certificate of deposit, was a depositor or customer of this bank; nor does it appear that he did or said anything after the receipt of the certificate of deposit from which it can be inferred that he recognized himself as a depositor. He held the certificate of deposit—evidence to him that his agent, the bank, had collected the money coming to him from Kingsley, had possession of this money, and would pay it over when the title to the land should be cleared up. Moriz Ladenburger by this was not consenting nor intending that his money should be mingled with that of the bank and that it should become his debtor therefor. It takes more than this to create the relation of banker and depositor. In *Anheuser-Busch Brewing Association v. Morris*, 36 Neb., 31, this court held: "Where a bank collects money for another, it holds the same as trustee of the owner, and on the making of an assignment by the bank for the benefit of its creditors the trust character still adheres to the fund in the hands of the assignee, and the owner is entitled to have his claim allowed by the county court as a preferred claim." In *McLeod v. Evans*, 66 Wis., 401, it was held that a banker who accepts for collection a draft and in fact collects the money thereon, holds the same as trustee of the owner; and, after his assignment for the benefit of creditors, the trust character still adheres to the fund in the hands of the assignee, irrespective of other creditors. These cases were decided upon the correct principle that to make one a depositor as such of a bank, and, in case of its insolvency, to limit his rights against

the assets thereof to those of an ordinary creditor, it must appear that such person became a depositor of such bank voluntarily. (See, also, *Wilson v. Coburn*, 35 Neb., 530.) In the case at bar the title to the money received by the bank of Wahoo from Kingsley for Moriz Ladenburger did not pass to the receiver. It was Moriz Ladenburger's money held by the bank in trust for him; and when a fund is once impressed with the character of a trust, such trust character continues until changed by the consent of the beneficiary. It cannot be said that the evidence in this record is sufficient to establish that Moriz Ladenburger ever consented that the bank should hold the Kingsley draft or the proceeds thereof otherwise than as his agent and in trust for him. The receiver is instructed to pay the claim of Moriz Ladenburger as a preferred claim, to-wit, $1,946.78, with interest thereon at the rate of seven per cent per annum from November 1, 1892.

JUDGMENT ACCORDINGLY.