No. 25,338.

J. E. BROGAN, for Himself and for and on Behalf of 885 Other Tax-
payers Similarly Situated, *Appellee*, v. R. T. KRIEPE, Receiver
for the Peoples State Bank of Coffeyville, *Appellant*.

SYLLABUS BY THE COURT.

TRUST FUNDS—*Taxes Paid by Taxpayers Through Bank Other Than County
Depository—Money Not Transmitted to County Treasurer—Insolvency of
Bank—Taxpayers Have Preferred Claim Against Bank Assets in Hands
of Receiver.* Where a realty company doing business away from the county
seat undertakes, for compensation, to pay taxes for its customers upon their
furnishing it the money, and deposits the money received from them to
the credit of the county treasurer, with his consent, in a local bank which
is not a county depository and in which the treasurer cannot lawfully de-
posit public funds, the bank having full knowledge of the facts, and while
matters are in that condition the bank is closed and proves to be insolvent,
the taxpayers have valid preferred claims for the amounts paid by them
against the assets in the hands of the receiver so far as they are augmented
thereby.

Appeal from Montgomery district court; JOSEPH W. HOLDREN, judge.
Opinion filed June 7, 1924. Affirmed.

*W. E. Ziegler, A. M. Etchen,* and *Carl E. Ziegler,* all of Coffeyville, for the
appellant.

*Walter S. Keith, Harold McGugin, Charles Bucher,* and *Barney Bucher,*
all of Coffeyville, for the appellee.

The opinion of the court was delivered by

MASON, J.:   J. E. Brogan, for himself and 885 other persons simi-
larly situated recovered a preferential judgment against the receiver
of the Peoples State Bank of Coffeyville, which is insolvent, for
money of which they were the beneficial owners which had been
irregularly deposited in the bank. The receiver appeals.

The plaintiffs' right to a general judgment against the receiver,
entitling them to share proportionately with other creditors in the
assets of the bank, is not disputed. The question presented is
whether the money of the plaintiffs was held by the bank in such
circumstances as to impress it with a trust in their favor, so far as
it can be traced into the hands of the receiver. The facts are not
in dispute, and may be thus summarized:

The Weaver Realty Company, a partnership, doing business at
Coffeyville, some fifteen miles from Independence, the county seat,

carried on a system of attending to the payment of taxes for such customers as should seek their help, in consideration of a small fee. The method adopted was this: The company provided itself with a copy of the tax rolls and a number of blank receipts bound in books of fifty. Each taxpayer who availed himself of the arrangement learned from the company the amount of his tax and paid to it that sum, with the fee for its services, obtaining in return its receipt. The company deposited these amounts to its credit in the Peoples State Bank of Coffeyville as they were received, and when it had written fifty receipts it gave the bank its check for the total (less its fees), as a means of transferring the amount to the credit of the county treasurer. The bank thereupon charged the sum against the company and entered it to the credit of Charles A. Mitchell, county treasurer, delivering to the company a duplicate deposit slip therefor in his favor, which it mailed to him, together with the receipts showing by whom the money it represented had been paid and the taxes to which it was intended to be applied. On receipt of the deposit slip the treasurer sent to the company his official receipts acknowledging the payment of his taxes by each taxpayer.

In this way there was deposited in the bank to the credit of the county treasurer during the month ending December 20, 1920, the sum of $75,848.88, of which $36,688.71 was the proceeds of payments by the plaintiffs. On January 18, 1921, the county treasurer drew upon the bank for $52,000, and the draft, on presentation, was not paid for want of funds. The next day the bank was closed. The bank had been designated as a county depository, but had never qualified by giving a bond as such, and therefore the treasurer was not authorized to have any of the county's money on deposit there. Consequently the plaintiff's purpose was not accomplished. Their money never reached the county treasury, no payment of their taxes resulted, and they remained liable therefor. (*Skinner v. Mitchell,* 108 Kan. 861, 197 Pac. 569.) The officers of the bank knew of the arrangement under which the company undertook to see to the payment of taxes for its customers and knew the plaintiffs' money to have been deposited under that arrangement. A member of the company testified that "The Newmans [president and vice president of the bank] always wanted us to deposit the money to the county treasurer's credit instead of

remitting for it by check, for the reason they would keep the money here instead of sending it to Independence."

From the foregoing statement it will be seen that the plaintiffs intrusted their money to the realty company to be used in the payment of their taxes. The company did not pay the taxes, but by an arrangement satisfactory to themselves, to the bank and the .county treasurer, but to which the plaintiffs were in no way parties and of which, so far at least as the record shows, they had no knowledge, deposited the money in the bank to the credit of the county treasurer, to be called for by him at such times as he should see fit. The money was required to be paid to the county by December 20 to avoid a penalty. The company's duty to the plaintiffs was to make the payment within that time. The willingness of the county treasurer to extend the time or to treat the payment as having been made does not affect the matter. His receipt, based upon money deposited to his credit in a bank in which he was not authorized to place public money, did not bind the county. If the company had merely made use of the bank as a convenient means of remittance to the treasurer at the county seat, and the transmittal of the funds had been prevented by the immediate closing of the bank, a different situation would be presented. It might then be argued that the methods employed, being in accordance with business customs, was within the contemplation of the parties. But it cannot be said that the plaintiffs anticipated that their money would be left to the credit of the county treasurer in a bank in which he was not authorized to deposit public funds. The company, however free from any actual wrong intent, instead of getting the money into the county treasury without unnecessary delay, chose a course by which it was left for an indefinite period in the Coffeyville bank, supposedly on call of the county treasurer, but at peril of a loss in case of the bank's insolvency. Such a disposition of the fund .was not authorized by its owners; it amounted to a misappropriation of the money by the company, with the knowledge, and indeed with the participation, of the bank. The money having been left on deposit wrongfully and without authority, the bank, which had full knowledge of the facts, held it charged with a trust in favor of its real owners—the plaintiffs. (*Secrest v. Ladd, Receiver,* 112 Kan. 23, 209 Pac. 824, and cases there cited.) The general rule applicable has been thus stated:

"When an agent misapplies money intrusted to him, or wrongfully converts the property of his principal into some other form, the principal is entitled, as against the agent or any person claiming under him except a *bona fide* purchaser, to the proceeds of such money or property, provided that they can be identified as such." (Tiffany on Agency, § 77, p. 323.)

"A constructive trust arises whenever another's property has been wrongfully appropriated and converted into a different form. . . . It is not essential for the application of this doctrine that an actual trust or fiduciary relation should exist between the original wrongdoer and the beneficial owner. Wherever one person has wrongfully taken the property of another and converted it into a new form, or transferred it, the trust arises and follows the property or its proceeds." (3 Pomeroy's Equity Jurisprudence, 4th ed., § 1051.)

"Where a deposit is made under such circumstances as to constitute a trust fund in the hands of the bank, such deposit is entitled to be repaid in preference to general creditors, where it can be identified, and, according to some authorities, even though it has been mingled with the general funds of the bank, where it augmented the assets of the bank." (7 C. J. 751.)

Where one has wrongful possession of the money of another and places it on general deposit to his own credit in a bank having knowledge of all the facts, the bank obviously holds it in trust for the real owner, and in the event of insolvency the claim for its recovery would be a preferred one. Where one has rightful possession of the money of another, but under such circumstances that its deposit in the bank is a violation of his obligations—is wrongful and inconsistent with the purposes for which it was intrusted to him—the situation in this respect is not materially different. "Where public funds are deposited in violation of law in a bank which has knowledge of the facts, the title does not pass, and a trust *ex maleficio* results, which in case of insolvency may be enforced against the receiver or other custodian, so far at least as they have come into his hands, and in some jurisdictions to the extent by which the assets under his control have been thereby increased." (*Phillips v. Bank*, 98 Kan. 383, 385, 158 Pac. 23. See, also, Supp. 1, R. C. L. 854, 855, § 182.) A trust in favor of the owner is held to result where money belonging to him is deposited in the bank to his credit without his authority (3 R. C. L. 556), and the same result should follow where the deposit is made in the name of the wrongdoer or of some third person; the important thing is that it gets into the bank without the permission or authority of the owner.

While a question is suggested as to the tracing of the fund into the hands of the receiver, it is said in the appellant's brief: "How-

ever, we think that the sole question for decision in this case is whether or not the moneys deposited in said bank by the Weaver Realty Company constituted a general or special deposit." The report of the referee, on which the judgment was based, included a finding that the assets which came into the hands of the receiver were increased by the amount of the deposit, and it does not appear that this was contrary to the evidence.

The judgment is affirmed.