**JOHN L. WALKER CO. v. ALDEN et al.**
No. 316.

District Court, E. D. Illinois.
March 12, 1934.

Walter T. Gunn, of Danville, Ill., for plaintiff.

Roy C. Martin, of Benton, Ill., for defendant.

LINDLEY, District Judge.

Plaintiff brings this suit in equity against the receiver of the First National Bank of Benton, Ill., asking the court to impress the funds in the possession of the receiver with a trust in behalf of plaintiff to the extent of $9,560. The receiver contends that no trust relation exists, but that plaintiff is a general depositor entitled to share in the distribution of the assets as such.

Plaintiff in December, 1921, entered into a contract with the city of Benton to build a sewer for the sum of $191,200 payable in bonds of sewer district No. 1 of that city. In May, 1922, the bonds were sold by plaintiff to the Hanchett Bond Company of Chicago at 86½ cents on the dollar of the face value. This contract was in writing and provided that the plaintiff would leave "five (5) points of the purchase price of the bonds with the bank for the benefit of the bondholders, pending the issuance of an order of the County Court approving the work and finally confirming the assessments." Plaintiff was to procure also the approving opinion of Chapman and Cutter, attorneys. This opinion was never secured, but it was refused upon grounds not material in this controversy. Upon compliance with the conditions aforesaid, the five points thus retained by the bank were to be delivered to plaintiff.

Subsequently the city engineer at Benton issued a certificate that the improvement had been completed in full compliance with the contract and in July, 1924, the county court entered an order approving the work and finally confirming the assessment.

It is agreed by the parties that the effect of the contract was to leave with the bank 5 cents on the dollar of the purchase price of the bonds to be held until the conditions mentioned could be complied with and then surrendered to plaintiff, and it is the resulting effect of this contract which furnishes the crucial point of this suit. The plaintiff insists that inasmuch as the money thus retained was held for the specific purpose of protecting the bondholders until the engineer and the court should approve the work as required by statute and was then to be surrendered to plaintiff, there was, by the receipt of the 5 per cent., an augmentation of the assets of the bank, the amount of which was retained for a specific purpose, and eventually upon satisfaction of the required conditions, was to become its property. It insists that this creates a trust relation out of which springs to it the right to have from the receiver, the fund represented by the 5 per cent., as against the general creditors. As against this the receiver contends that the money was deposited as any other deposit was made and that plaintiff is entitled to no preference.

From time to time the bonds were received by the bank and forwarded to the First National Bank of Chicago for delivery to the purchaser, who remitted to the First National Bank of Chicago for them as they were sold. The latter bank thereupon credited the account of the Benton bank with the amount of the purchase price of the bonds. The Benton bank, upon advice of such credit, credited to the plaintiff in its general deposit in that bank all of the purchase price of the bonds except the 5 per cent. The credits representing the 5 per cent. of the purchase price to be retained by the bank were entered in a new deposit account opened June 15, 1922, the date of the first sale of bonds, reading as follows: "First National Bank, Trustee for John L. Walker Company and the Hanchett Bond Company." The bank prepared a deposit slip for each of the installments representing the 5 per cent., crediting the same to this special account. Upon the reverse side of the first deposit slip the bank entered a notation "do not pay any checks on this account unless authorized by G. C. Cantrell." The entry upon the deposit slip read: Deposited by First National Bank Trustee for John L. Walker Company and the Hanchett Bond Company, June 15, 1922, currency $1,750.00. The above amount is to be held by the First National Bank of Benton, Illinois, until the city of Benton accepts the work and the final adjudication for same, at which time the money shall be turned over to the John L. Walker Company."

The bank wrote plaintiff stating that it had received proceeds of sale of bonds and that it had "set aside in a special deposit account five per cent of the face value of these bonds, namely $1,750.00, which is to be paid to John L. Walker Company" when the conditions should be complied with. This system of bookkeeping prevailed during the entire transaction. All the bonds were sold and all the proceeds of the selling price were credited to the general account of plaintiff except the 5 per cent. which was credited to the account entitled "First National Bank, Trustee for John L. Walker Company and the Hanchett Bond Company." Plaintiff received duplicate deposit slips for each item so credited. The amount of deposit was $9,-560. No checks were drawn against it, nor

264

was it subject to checking. The fund remained on hand for several years and was in the same condition when the receiver was appointed in 1930. Upon two occasions six months' interest was paid plaintiff and there has been credited to the account six months' interest at the same rate.

In the correspondence between plaintiff and the bank, both the president of the bank and the plaintiff from time to time mentioned this fund as "escrow fund," "trust fund," and "deposit."

 A trust relation may grow out of express contract or it may result from facts and circumstances independent of contract. Many courts have held that a deposit made and executed on the condition that it is to be used to pay a particular obligation or to be held as security for some particular purpose will be treated as a trust fund. Upon these cases the plaintiff bases its claim. Illustrative of this proposition are many cases cited in the footnote.[1] We shall not attempt to analyze all of them. Each arises out of the particular facts presented and in general they hold that a fund delivered to a bank for a specific purpose such as the payment of a note held by a third person or to be paid to another bank or a third person in fulfillment of a specific purpose such as the completion of the contract of a house or drilling of an oil well or to be delivered when a warranty deed should be received or when a certain guarantee had been completed, or to be transmitted to another bank to meet maturing coupons on bonds, or to pay a certain amount of taxes, when the amount could be determined, or to discharge mortgage to be delivered to the bank, or to pay a certain specified outstanding check of the depositor, or to secure a certain specified payment of rent, or speaking generally, to be held by the bank for the purpose of furthering a transaction between the depositor and a third person, or under such circumstance as to give rise to a necessary implication that it is made for such purpose is of trust character.

Here there is no question but that the fund was received for a certain specific purpose, namely the protection of the bondholders until certain conditions had been complied with, and upon such compliance, to be delivered to the plaintiff. However, certain difficulties are encountered. The receiver contends that inasmuch as the actual fund was not received but was created by bookkeeping credit for which corresponding credits were entered by the Benton bank, there was no augmentation of the funds of the bank and in fact no creation of a trust fund. It is

[1] Montagu v. Pacific Bank (C. C.) 81 F. 602; Central Bank & Trust v. Ritchie, 120 Wash. 160, 206 P. 926; Capital National Bank v. Coldwater National Bank, 49 Neb. 786, 69 N. W. 115, 59 Am. St. Rep. 572; People v. City Bank, 96 N. Y. 32; Sawyers v. Conner, 114 Miss. 363, 75 So. 131, L. R. A. 1918A, 61, Ann. Cas. 1918B, 388; Lamb v. Ladd, 112 Kan. 26, 209 P. 825; Hudspeth v. Union Trust & Savings Bank, 196 Iowa, 706, 195 N. W. 378, 31 A. L. R. 466; Schulz v. Bank of Harrisonville (Mo. App.) 246 S. W. 614; Kimmel v. Dixon, 5 S. D. 221, 58 N. W. 561, 25 L. R. A. 309, 49 Am. St. Rep. 839; State ex rel. Ladenburger v. State Bank, 42 Neb. 896, 61 N. W. 252; Shopert v. Indiana Nat. Bank, 41 Ind. App. 474, 83 N. E. 515; Stoll v. Meade County Bank, 39 S. D. 136, 163 N. W. 565; Peak v. Ellicott, 30 Kan. 156, 1 P. 499, 46 Am. Rep. 90; Merchants' Nat. Bk. v. School Dist. (C. C. A.) 94 F. 705; St. Louis v. Johnson, Fed. Cas. No. 12,235; Ryan v. Phillips, 3 Kan. App. 704, 44 P. 909; In re Jarmulowsky (C. C. A.) 258 F. 231; Lusk Development v. Ginther, 32 Wyo. 294, 232 P. 518; Brogan v. Kriepe, 116 Kan. 506, 227 P. 261, 37 A. L. R. 126; Mothersead v. Harrington, 123 Okl. 179, 250 P. 483; Blummer v. Scandinavian-American St. Bank, 169 Minn. 89, 210 N. W. 865; Corporation Commission v. Merchants' Bank & Trust Co., 194 N. C. 125, 138 S. E. 530, 57 A. L. R. 382; Chapman v. First National (Tex. Civ. App.) 275 S. W. 498; Samuel Haas v. Service Association, 222 Mo. App. 307, 297 S. W. 129; Blythe v. Kujawa, 175 Minn. 88, 220 N. W. 168, 60 A. L. R. 830; Evans v. Peoples' Bank, 222 Mo. App. 990, 6 S.W.(2d) 655; Greenfield v. Clarance Savings Bank (Mo. App.) 5 S.W.(2d) 708; In re Security Savings Bank, 205 Iowa, 171, 217 N. W. 831; Woodhouse v. Crandall, 197 Ill. 104, 64 N. E. 292, 58 L. R. A. 385; Dearborn v. Washington Savings Bank, 13 Wash. 345, 42 P. 1107; Starr Cutter Co. v. Smith, 37 Ill. App. 212; Carlson v. Kies, 75 Wash. 171, 134 P. 808, 47 L. R. A. (N. S.) 317; Northwest Lumber Co. v. Scandinavian American Bank, 130 Wash. 33, 225 P. 825, 39 A. L. R. 922; Boone County Nat. Bank v. Latimer (C. C.) 67 F. 27; People v. Auburn State Bank, 215 Ill. App. 133; Mutual Accident Association v. Jacobs, 141 Ill. 261, 31 N. E. 414, 16 L. R. A. 516, 33 Am. St. Rep. 302; Titlow v. Sundquist, 234 F. 613 (C. C. A. 9); Blakey v. Brinson, 286 U. S. 254, 52 S. Ct. 516, 76 L. Ed. 1089, 82 A. L. R. 1288; Howland v. People, 229 Ill. App. 23.

undisputed that the First National Bank did in each instance credit upon its books the Benton bank with the proceeds of sale of bonds, and that from time to time in the general course of business such credit balance in the Benton bank's favor decreased, until when the receiver was appointed there was a balance due the First National Bank of Benton of approximately $200 which was paid to the receiver.

The receiver admits that if a trust fund comes into actual existence, and, though it cannot be identified as such, if there remains sufficient funds on hand to satisfy the demands of such special deposit, the law will presume that in the dissipation of its funds, the bank spent first its own money leaving the trust fund intact, and it is shown here that there was at all times in the bank's hands, currency sufficient to pay to plaintiff the amount of the so-called trustee's account. Thus in Empire State Surety Co. v. Carroll County, 194 F. 593, 605 (C. C. A. 8th), the court said:

"Proof that a trustee mingled trust funds with his own and made payments out of the common fund is a sufficient identification of the remainder of that fund coming to the hands of the receiver, not exceeding the smallest amount the fund contained subsequent to the commingling * * * as trust property, because the legal presumption is that he regarded the law and neither paid out nor invested in other property the trust fund, but kept it sacred."

And in the case of Fiman v. State, 29 F. (2d) 776, 780 (C. C. A. 8th), certiorari denied 279 U. S. 841, 49 S. Ct. 254, 73 L. Ed. 987, the court said:

"The trust having been established, to regain its funds it is then necessary for the claimant to show that the receiver, as such, has in his hands a common fund in which the claimant's deposit is included. These matters being established the law adds thereto a presumption that the bank in expending the funds expended its own funds and not the trust fund; in other words, when the trust is proven and there is a showing that the receiver has a common fund in his hands, this, plus the presumption, makes a prima facie showing entitling the claimant to a preference in the event it is not overcome by the proof of the receiver."

To the same effect is the late case of People v. People's State Bank of Maywood, 354 Ill. 519, 188 N. E. 853, where other cases are cited.

But the receiver contends that the rule mentioned does not apply to the case at bar for the reason that the plaintiff cannot show that the fund came into the possession of the bank as a special fund, in view of the fact that it arose merely from credits with the First National Bank of Chicago. Concerning this contention, the plaintiff insists that a credit transaction is recognized as augmentation of assets; that substantially all bank accounts are credit accounts; and that settlements between banks are made not in currency but in clearing house settlements. From this it follows, says the plaintiff, that if we are to follow the rule that the fund itself must be augmented by currency, equity would be defeated because in the vast majority of cases, the augmentation arises by virtue of a credit account.

With this line of reasoning the court finds itself in full accord. If a trust relation exists and a trust fund is accumulated upon the books of the bank, I see no justification for defeating the trust relation because the actual money is not there. It would seem entirely logical in such situation that the trust relation should apply to the moneys on hand. In other words, it being presumed that in reducing the funds on hand, the bank intended first to spend its own money, the trust should revert to the balance on hand. Any other reasoning defeats the very purpose of protecting a trust. Thus in Schumacher v. Harriett, 52 F.(2d) 817, 819, 82 A. L. R. 1 (C. C. A. 4th), the court said:

"The doctrine of tracing trust funds has been greatly liberalized in recent years. The old rule was that the right ceased when the property was turned into money and mixed and confounded in a general mass of property of the same description. The modern rule of equity, however, is that, 'where the fraudulent depositary so mingles goods which he has obtained by fraud with the mass of like goods of his own, the whole may be seized, or considered as held in trust, until equitable separation of the property of the defrauded party is made. So, advancing one step further, where money thus obtained has gone to swell the aggregate in the possession of the fraudulent party, it may, under proper proceedings, be segregated in amount from such aggregate sum, and made the subject of a trust, in order to accomplish the ends of justice.' "

In other words proof that the bank mingled a trust fund with the funds of the bank and made payment from the common mass should, in view of modern doctrines and

usages, constitute · a sufficient tracing and identification of the fiduciary fund in so far as there remains a balance in the common fund after such commingling and after an expenditure or dissipation of a part thereof. Empire State Surety Co. v. Carroll County, 194 F. 593 (C. C. A. 8th); Brennan v. Tillinghast, 201 F. 609 (C. C. A. 6th); Macy v. Roedenbeck, 227 F. 346, L. R. A. 1916C, 12 (C. C. A. 8th); American Surety Co. v. Jackson, 24 F.(2d) 768 (C. C. A. 9th).

In American Surety Co. v. Jackson, 24 F.(2d) 768 (C. C. A. 9th), the court held that where a trust deposit has been shown to be placed by the bank in its common fund and it is also shown that the common fund does not at any time fall below the amount of the trust fund, the burden is on the receiver to show that the withdrawals or disbursements therefrom were of trust funds and that the trust fund was dissipated or lost. See, also, Fiman v. State, 29 F.(2d) 776 (C. C. A. 8th); Schumacher v. Harriett, 52 F.(2d) 817, 82 A. L. R. 1 (C. C. A. 4th); Cuttell v. Fluent, 51 F.(2d) 974 (C. C. A. 8th).

■ However, there is another line of reasoning in most federal cases to which reference should be had. Those courts have quite frequently adhered to the doctrine that in order to take a deposit out of the debtor-creditor class and clothe it with the qualities of a trust, there must be a showing that the parties intended to stamp a deposit as unusual and ·fiduciary in character. Thus in Keyes v. Paducah & I. R. Co. (C. C. A.) 61 F.(2d) 611, 86 A. L. R. 203, $8,000 was lodged with the court as security for a temporary restraining order. The order of the court provided: "This injunction is conditioned upon deposit by plaintiff in the National Bank of Kentucky of Eight Thousand Dollars, to abide the event of this ·cause, and it appearing to the court that this has been done, said sum so deposited shall be at all times subject to the order of this court." The bank received the cash for the draft and advised the company that they were holding the proceeds in the form of a cashier's check. Subsequently, the bank became insolvent. The company sought to have the $8,000 declared a special deposit of trust character. The court held that this language did not indicate any intention upon the part of the court or the parties that the funds were to be segregated and kept distinct from the general funds of the bank and that inasmuch as the bank had the right to use the money, only a debtor and creditor relation had been created. The following language is pertinent:

"There is a class of state cases which seem to hold that, whenever money is deposited with a bank to await the completion of a contract, the outcome of pending litigation, or as security, the deposit must be considered as having been received in trust for a specific purpose. * * * We think, however, that it is the necessary effect of the Supreme Court cases cited that the presumption that arises from the very nature of the banking business of a right to use deposited funds in the general business of the bank where there is absent any expressed or clearly implied intention otherwise precludes us from sustaining the conclusion of the court below that the fund here in question was a special deposit, or became impressed with a trust. We are sustained in this view by decisions in other federal circuits upon similar or analogous facts."

In Minard v. Watts (C. C.) 186 F. 245, 247, the parties had agreed that certain rentals due a landlord should be deposited in the bank pending the disposition of certain litigation. The court refused to characterize the deposit as of anything other than the ordinary character:

"Banks are not created for the purpose of acting as bailees of the property of others, either with or without hire. While a national bank by contract may possibly bind itself to such legal relation, it is quite clear this may be done only either by express contract or the transaction of deposit must, from its very nature, be of such character as to imply such obligation and relation."

In Davis Trust Co. v. Smith, 226 F. 410, 412 (C. C. A. 4th), Davis had put money in the bank upon a stipulation providing that it should be "held by you on special deposit in trust on the conditions and for the purposes following, viz., $13,000 for the use of each of said children until they respectively arrive at the age of 21 years. * * * To each of said children upon his or her arriving at the age of 21 years, you shall pay the principal sum of $13,000, with any interest that may then be due upon the same." The bank signed the receipts stating that it held the deposit "in trust for the purposes mentioned," but the court refused to treat the deposits as anything other than as general in character. Other federal cases of similar import are Hirning v. Federal Reserve Bank (C. C. A.) 52 F.(2d) 382, 82 A. L. R. 297;

Blakey v. Brinson, 286 U. S. 254, 52 S. Ct. 516, 76 L. Ed. 1089, 82 A. L. R. 1288.

In Connolly v. Lang, 68 F.(2d) 199 (C. C. A. 7th), a depositor intending to withdraw a savings account received a bank draft upon a New York bank for the amount thereof. Before the draft could be collected, the bank failed. The court refused to consider the relation anything other than that of debtor and creditor. See, also, Swan v. Children's Home Soc. of West Virginia, 67 F.(2d) 84 (C. C. A. 4th); Pottorff v. Key, 67 F.(2d) 833 (C. C. A. 5th); Thompson v. Common School District, 67 F.(2d) 284 (C. C. A. 9th).

■ Apparently the parties herein contemplated that interest should be paid. As pointed out in various decisions, a recovery against the receiver of a national bank is not based upon any provision of the statute creating any lien or preference, for the statute forbids preferences, but is authorized in situations where the facts are such that the court must say in equity that the property is not that of the bank but that of the claimant. Payment of interest springs out of a debtor-creditor relation. One does not receive interest from property; he receives interest from a loan, while from property he receives profits. Consequently payment of interest is inconsistent with the existence of a trust relationship. In McNulta v. West Chicago Park Com'rs (C. C. A.) 99 F. 900, at page 905, the court said:

"A deposit upon which interest must be paid cannot be special or in trust, and, in case of the failure of the bank, must, for the purpose of payment, be on the same footing with other deposits or unsecured demands."

The courts quite generally hold that an agreement to pay interest necessarily implies the right of the bank to use the money; that it is not consistent with the relation of bailee and bailor but destructive of any presumption of a trust relationship. Scammon v. Kimball, 92 U. S. 362, 23 L. Ed. 483; People v. Robinson, 352 Ill. 596, 186 N. E. 484; Pittsburg Nat. Bank of Commerce v. McMurray, 98 Pa. 538; Leaphart v. Commercial Bank of Columbia, 45 S. C. 563, 23 S. E. 939, 33 L. R. A. 700, 55 Am. St. Rep. 800.

■ The fact that the money was deposited to the credit of the bank as trustee for plaintiff, that no checks were to be drawn upon it, and that it was at times spoken of as being "in escrow" or "in trust" is, in my opinion, insufficient to take the case out of the rules announced by the federal courts in the cases referred to. Apparently, it was contemplated by the parties that the bank should have the right to use the fund just as it used other funds on deposit, by loaning the same to customers and by agreeing to account for the same when the conditions were complied with. In its essence the arrangement was not different from a long time certificate of deposit. It is presumed that money received by banks is to be received in the ordinary sense and used by it in the ordinary banking sense, and until the court can see that certain facts stand out forcing a characterization of the transaction as a deposit of some character other than the ordinary character, it is not justified in giving any preference to a deposit. As the plaintiff knew that the money was being received and deposited and that he was receiving interest upon the same, I do not believe that it did anything or that the bank did anything to take the deposit out of the ordinary debtor-creditor class of deposits.

Consequently, there will be a decree denying plaintiff's claim for preference but allowing it as an unsecured debt. Proper decree may be submitted. Each party will pay its own costs.