## BYRON JUDD *vs.* SARAH DRIVER.

Taxes are charges imposed by the legislative power upon persons or property to raise money for public purposes.

In absence of legislation providing otherwise, taxes would be payable in money only, and lands sold in default of the payment thereof would be sold for, and redeemable in money only.

By the tax law of '58, and amendments in '60, the liability of the tax payer was changed so that he could l e discharged, by the payment over of the different warrants for the payment of which the tax was levied.

The county holds lands struck off to her for non-payment of taxes, subject to being redeemed by the payment thereof, with interest and costs, by the defaulting tax payer, the county holding it for township, county and state taxes, *held* that it is sufficient if payment is made to her in the evidence of indebtedness· in due proportion of the several bodies politic for whom it holds land.

Certificates of purchase of lands sold for taxes, without legislation would not be assignable. By statute the effect of the assignment is the same as that of a bond for the conveyance of lands, which conveys no more than is stipulated in the bond. Such certificates do not give the assignor an absolute and certain right to the land, but may be defeated at any time within the limits prescribed by law, by the payment of the legal charges on the land ; *held* that the assignee takes no more.

*Held,* that the liability of the owner of the land is not increased by the assignment.

*Held,* that when the certificates of purchase have been assigned, the county is bound to receive, in redemption of these certificates, the various kinds of warrants, in due proportion, for the payment of which the land was levied.

The proceeding by mandamus is essentially a civil proceeding, and is a subject within the jurisdiction of the district court.

This case was originally commenced in the district court of Wyandotte county, by the filing, on the eleventh of April, 1863, by defendant in error, Sarah Driver, of a sworn petition, against the plaintiff in error, Byron Judd, treasurer of the said county, in which was set fourth that the petitioner was owner in fee simple of real estate in Wyandotte township, in said county, describing it; that said real estate, for the years 1859 and 1860, was duly assessed to pay as follows: a tax for

1859 of fourteen dollars and twenty cents; that six dollars of said tax was denominated township and eight dollars and twenty cents thereof was denominated county; and, for 1860, a tax of ten dollars and forty-four cents, one dollar and eight cents of which was township, and seven dollars and twenty cents county, one dollar and eight cents territorial tax, and one dollar and eight cents thereof was denominated "sinking fund," and that on the ninth day of October, 1860, said Treasurer caused said real estate to be sold for taxes for the year 1859, which on said sale was bid in by the county, in absence of other bidders, and that on the first day of January, 1862, first having duly advertised the same, said treasurer caused the said land to be sold for the tax of 1860, and bid in the same for the county as before. That on January 1st, 1863, Cooper & Stockton paid to the said treasurer the several sums of money so assessed as aforesaid against said lands, together with interest, and in the several kinds of scrip in amounts as indicated by the different kinds of taxes, and took an assignment of the county certificates in their firm name, and now hold the same. That on April 3d, 1863, the petitioner tendered to said treasurer the said several kinds of scrip in amount, and equal to the amount of all the taxes for said years 1859 and 1860, together with the interest, and United States legal tender notes sufficient to cover all cash taxes, costs and charges, and demanded a redemption certificate of said treasurer, which was by him then refused, and who then demanded legal tender for the whole amount. The petitioner prayed a writ of mandamus to plaintiff in error, treasurer, &c., commanding him to show cause why he should not receive the various kinds of scrip conforming to the various kinds of taxes against said lands, and costs, charges and interest, and why redemption certificates should not be given.

The said Byron Judd, treasurer, &c., acknowledged the tender on April 3d, 1863, of scrip and cash as follows: Wyandotte county scrip, nineteen dollars and seven cents;

township scrip of Wyandotte township, seven dollars and forty-two cents; territorial (Kansas) scrip, one dollar and forty-two cents, and fifty cents cash, the same being the amounts of different kinds of scrip equal to the different kinds of tax and interest, at twenty-five per cent., existing on the land, and all cash expenses and charges on the same, and at the same time demanded a redemption certificate for said land, and that he refused to receive the same, and to give a redemption certificate to her.

It was ordered by the court that a peremptory mandamus issue as prayed for.

The petition in error set forth as grounds of error, first, a want of evidence to prove the alleged facts; second, that the court did not find that defendant in error was owner of or had an interest in the land, or that a tax cerficate had ever been issued or assigned; third, that it appears by the petition that Cooper & Stockton have an interest in the question, and are not made parties, and that the judgment precludes their rights; fourth, that there was no legal duty upon the plaintiff in error, as county treasurer, to receive scrip for the redemption of the lands sold and assigned as stated in said petition, therefore the writ of mandamus ought not to be ordered to issue; fifth, that defendant in error does not ask for a peremptory writ; sixth, that no time was allowed plaintiff in error to answer; seventh, that the district court had no jurisdiction of the subject matter of the petition, nor any power to grant the prayer.

*Cooper & Stockton*, for plaintiff in error.

I. Taxes properly and legally assessed are payable in money, unless controled by legislation. The tax of 1859 was payable in money sure. In 1860, legislature provides (*Comp. Stat.*, *p.* 881, § 1,) for the payment of taxes in scrip, but not for the redemption of land sold for taxes. There is a broad

distinction between paying taxes and redeeming lands sold for taxes.

II. No provision is made for redeeming lands sold for taxes in scrip until 1862, (*Comp. Laws, p.* 876, § 8; *p.* 869, §§ 50 *and* 52,) and then only town lots can thus be redeemed. The legislature above refered, shows that taxes, previous to the legislation, was payable in money only, and that the county treasurer is only bound to receive scrip in those cases provided for by law.

III. The holder of a certificate of sale of land for taxes has the same rights whether he bids off the land or is the assignee of the certificate. No sensible reason can be offered for any distinction in law. There is no difference in principle. The legislature has determined what the rights of the holder of a sale certificate shall be. (*Comp. Laws, p.* 876, § 8.) The exception in the eighth section does not apply to lands outside of towns or cities, nor to lands held by individuals as purchaser or assignee of the county.

IV. The statute of 1862 cannot affect this case, as the sale took place before its passage, and it materially changes vested rights if allowed to operate.

V. The district court has no jurisdiction in mandamus. The constitution requires the jurisdiction of the district court to be defined by law. The district courts have no powers but such as are delegated by law. District courts have no more right or power to assume jurisdiction not delegated than has a judge of probate or a justice of the peace. (*Comp. Laws, p.* 58, § 6.) The provisions of the code in reference to mandamus gives no jurisdiction to any court.

The statute of 1861, (*Comp. Stat., p.* 454, § 1,) defines the jurisdiction of the district court. Until jurisdiction is given by the legislature to the district court it does not exist. The general principle, that jurisdiction is governed by the constitutional provisions and legislation, needs no authority to support it. The supreme court of the United States cites an

example in this regard, in the case of *Morbury vs. Madison*, (1 *Cranch*, 137; 1 *Kent*, 322.)

VI. The constitution gives original jurisdiction in mandamus, to the supreme court, and this is to be taken as exclusive, at least until some legislation shall delegate jurisdiction to some other court. (1 *Kent*, 314, 315; *United States vs. Ravora*, 2 *Dalas*, 297; *Morbury vs. Madison*, 1 *Cranch*, 137; *Pennsylvania vs. Kosloff*, 5 *Sergt. & Rawle*, 545; *Comp. Laws*, p 5, § 3.) This jurisdiction cannot be exercised by inferior courts without provision therefor by law when original jurisdiction is vested in the supreme court.

VII. The mandamus is a prerogative writ, and hence by common law could only be issued by the king's bench, the highest court in the relm. No other court had jurisdiction.

VIII. This record shows affirmatively that the judgment was based upon the evidence given in the record, and it is very clear that there is no evidence of title in the defendant in error, or that any certificate had ever been issued. These facts are material, because, unless a person has an interest in the land, they cannot redeem.

IX. The court proceeded to judgment when it appeared from the petition that the rights of Cooper & Stockton would be precluded thereby without making them parties.

X. The mode of proceeding was error. The code provides the mode of proceeding, which is not attempted to be followed, but instead of that mode one entirely different is adopted. It may be well enough in a court having no jurisdiction, but manifestly this is a singular proceeding. It has the merit of being original, and that is all its merit.

*A. B. Bartlett and D. B. Hadley*, for defendants in error.

I. As to the question, has the district court jurisdiction? *reference is made to* § 3, *Art.* 3, *Const., Comp. Laws*, p. 57; § 1, *chap.* 68, *Comp. Laws*, p. 454; § 5, *chap.* 68, p. 455; § 1, *chap.* 42, *Stat. K. T.* 1855, p. 223. Same provisions in con-

stitution in regard to mandamus, *quo warranto*, and *habeas corpus*. The district courts have jurisdiction in *quo warranto* and *habeas corpus* by special enactment. (§ 1, *chap.* 169, *Comp. Laws, p.* 766, *act of* 1859; §§ 2 *and* 7, *chap.* 107, *p.* 580, *act of* 1859.) Had not the legislature presumed that the district court had jurisdiction in mandamus it would have especially provided for that. The code contemplates such jurisdiction in all its provisions, especially section fifty-four, (*p.* 132, *Comp. Laws,*) " or for a neglect of his official duties." How can the action to compel the county treasurer to perform his official duties be brought in *his* county, unless in the district court? But section one, (*chap.* 58, *Comp. Laws, p.* 454,) settles this point beyond a doubt. "Shall have original jurisdiction in all *civil cases* whatever," and "shall have power to issue remedial and other process." Is not this a *civil* action? All actions are either " civil or criminal." (§ 6, *Code, p.* 125.) Is not this a civil action? Section seven, same page, defines a criminal action, and section eight, (*p.* 126,) says, "every other action is a civil action." Is this action " prosecuted by the state as a party against a person charged with a public offense?" Section three (*chap.* 68, *Comp. Laws, p.* 454,) gives the judges of the district court all the powers the district judges had under the statutes of the late territory, and I have already shown that they had jurisdiction in mandamus. As well might it be contended that the district court has no jurisdiction of an action on the bond of a county treasurer, for a breach of its conditions, or on any other obligation. The point cannot be well taken. Indeed it is too palpably absurd to require further refutation.

II. Can the owner redeem lands sold for taxes for A. D. 1860, to the county, and by the county *assigned*, as provided by law, to a third party, in the various kinds of warrants, viz: township, county, and territorial? All laws in regard to the assessment and collection of taxes, prior to February 12th, 1858, were repealed by act of that date. (§ 131, *chap.* 66,

Judd *v.* Driver.

*Laws of* 1858.) The act of February 12th, '58, was the law of the territory until February 27th, '60, when that law was repealed by act of last date. (§ 73, *chap.* 198, *Laws of* 1860, *p.* 874.) On the same day another act was passed, defining what should be received in payment for taxes. (§ 1, *chap.* 199, *Comp. Laws, p.* 881.) Under the existence of these two acts, (viz. February 27th, 1860,) the assessment, sale and redemption must be made in case at bar. (§ 1, *chap.* 188, *Comp. Laws, p.* 837.) Then, so long as the land remained in the hands of the county, there can be no question but the various warrants could be used for its redemption. But in *this* case, the certificate of sale to the county, as provided for in section forty-three and forty-four, chapter one hundred and ninety-seven, page eight hundred and sixty-seven, compiled laws, has been assigned to a stranger, and it is contended that, after assignment, the owner is bound to pay *legal tender* to the county treasurer in amount equal to the tax, penalty, expenses and interest. This is really the only question in the case. *Before* the assignment there can be no doubt about it. (*Chap.* 199, § 1, *p.* 881, *Comp. Laws.*) The redemption money is to be paid to the county treasurer, *not* to the assignee. (§ 50, *chap.* 197, *Comp. Laws, p.* 869.)

The same section that makes the certificate of sale to the county assignable, also defines what the force and effect of that assignment is. (§§ 43 *and* 44, *chap.* 197, *Comp. Laws, p.* 867.) "Such assignment shall have the same force and effect as the assignment of bonds for conveyance of lands." Then our inquiry is, what is the force and effect of an assignment of a bond for the conveyance of lands? What is the relation of the parties in case at law? The plaintiff below is obligor. Defendant below is obligee, and Cooper assignee. What is the statute law in regard to the assignment of bonds, and the rights of the assignee ? (§ 2, *chap.* 19, *Comp. Laws, p.* 113.) There will be no question in case at bar, that the certificate or bond was over due when the assignment was made. When the

assignee takes it subject to all equities that it would be entitled to in the hands of the defendant or obligee, what are those equities? To comply with the conditions, one of which is to redeem the land, by paying the amount of taxes, penalty, costs, and twenty-five per cent. interest, in three years from the day of sale, in *money* or territorial, county, township, or city *warrants* as *she* may elect. That is, the assignee shall take *no more* than the original obligee. The same principle is recognized everywhere in the common law. (*Decisions, Hackett vs. Martin,* 8 *Green., Me.,* 77; *and Lithgow vs. Evans,* 8 *Green.,* 330; *Ensign vs. Kelogg et al.,* 4 *Pick.,* 1; *Furman vs. Haskin,* 2 *Caines, N. Y.,* 369; *Bank of Niagara vs. Mc-Cracken,* 18 *Johns.,* 493; *Chamberlain vs. Gorham,* 20 *Johns.,* 144; *The Bank of Niagara vs. Rosevelt,* 9 *Cowen,* 409; *Clark vs. Boyd,* 6 *Monroe,* 294; *Harrison vs. Burgess,* 5 *Monroe,* 420; *Stockton vs. Hall, Hardin's, K. T.,* 160; 12 *Mass.* 196; *Hatch vs. Green; Pickett vs. Morris,* 2 *Washington,* 255; *Compty vs. Atken,* 2 *Bay,* 481; *Corser vs. Craig,* 1 *Washington, C. C.,* 424; *Clute vs. Robinson,* 2 *Johns.,* 595; *Metzger vs. Metzger,* 1 *Rawle,* 227.)

Then the assignee stands in place of the county, and as such must receive for redemption money, the paper of the county, and is in all respects in the same condition of the county. Would you have any doubt in a suit by the county against the defendant in error that she might discharge the debt with county warrants—the paper of the county?

By the Court, KINGMAN, J. The main question presented in this case is this: can the owner redeem lands sold for taxes for the years 1859 and 1860, to the county, and by the county assigned to a third party, in the various kinds of warrants for the payment of which the tax was raised, viz: township, county and territorial? Taxes are defined to be burdens or charges imposed by the legislative power of a state upon persons or property to raise money for public purposes.

In the absence of any legislation providing otherwise the tax would be payable in money only, and if in default of payment the lands are sold they are sold for money, and would be redeemable in money only.

The land sought to be redeemed in the case before us, was sold on the first day of January, 1862.

By the tax law, of 1858, town and county orders were receivable respectively for town and county taxes; territorial taxes were to be paid in gold and silver. (§ 53, *p.* 360 *Laws* 1858.) This law was amended by the act of February, 1860, so as to make territorial warrants receivable for the territorial taxes. The liability of the tax payer then was so far changed that he might be discharged by the payment over of the different warrants for the payment of which the tax was levied. This was the charge upon the land in default of which it was to be sold.

. Could it be redeemed in the various kinds of warrants when the county was the purchaser?

The county is not a voluntary bidder for the land sold for the non-payment of taxes, but it is struck off to the county, and she holds it subject to be redeemed by the extinguishment of the liabilities of the defaulting tax payer within a given time. These liabilities are the payment of so much tax, either in money or warrants, with the interest thereon. The county holding it for the township, county and state must be satisfied if the payment is made to her in the evidence of indebtedness in due proportion of the several bodies politic for whom it holds the lands. This is equity, and is believed to have received the sanction of every county in the state. By the act of March 6th, 1862, and while the tax certificate still belonged to the county, the legislature made further provision, which, in part, was only declaration of what the law was, as that "the redemption money shall be paid in gold or silver, except on lands purchased by the county."

(*See* § 8, *p.* 877, *Comp. Laws,*) By that section, the right to redeem, in warrants, lands struck off to the county is rather a matter of inference than of absolute statement. In the proviso, the right to redeem lots in cities, in warrants, is absolute. This provision is nugatory as not being of uniform operation, unless there is a right to redeem all lands sold to the county, in warrants. It is a uniform rule of construction that one part of a statute should be construed by other parts of the same statute so that, if possible, no clause or part shall be treated as superfluous, and especially when the two are parts of the same section. Now, the last part of section eight, last refered to, is void unless it appears from the first part of the section that the same right to redeem, and in the same way is extended to all the lands in the state.

We think, therefore, even if the right to redeem in warrants does not necessarily result from the right to pay in warrants when the land is struck off to the county, that this section gives that right.

The next step in the inquiry is what effect the assignment of such certificate of purchase shall have. Without legislative enactment they would not be assignable at all. (*Blackwell*, 444.) "The rights of the purchaser at a tax sale, prior to the execution of the deed, is only an equitable one in the lands, and even that interest depends upon a contingency that may or may not happen;" in such cases the law does not regard the interest as an assignable one without positive legislative enactment. It is made assignable by statute, and it is declared that the effect of the assignment shall be the same as the assignment of bonds for the conveyance of lands. The assignee of a bond for the conveyance of lands takes no more than is stipulated in the bond. What then is the legal right of a holder of a certificate of purchase of land sold for the payment of taxes? It is not an absolute bond giving him any positive and certain right to the land, but one which may be perfected by deed, and liable also to be defeated at any

Judd *v.* Driver.

time within the limits assigned by law, by the payment of the legal charges on the land. The assignee takes that much and no more. These charges in this case are the payment in money or warrnts of the taxes, costs, and accruing interest, and this is all the holder can get by the purchase of the certificate.

The liabilities of the owner of the land are not increased by the change of ownership in the tax certificate. We think therefore that the county holding certificates of purchase of lands, sold for taxes, is by law bound to receive in redemption of those certificates, if tendered, the various kinds of warrants in due proportion for the payment of which the land was levied.

Some preliminary questions were made and argued in this case; only one of which is so presented by the record that it is reviewable here in its present shape, and that one is as to the jurisdiction of district court in case of mandamus.

The language of the law confering jurisdiction upon the district court is very broad and most ample to sustain the jurisdiction of those courts in case of mandamus. "They shall have original jurisdiction in all *civil cases* whatever." The proceeding by mandamus is essentially a civil case, having all the attributes and qualities of a civil case, and whether it belongs to the class of cases called "civil actions," by the code, as was claimed by the counsel for defendant in error, or is a "special proceeding," it is equally a civil case and therefore, by express law, a subject within the jurisdiction of the district court.

Therefore the judgment of the court below is affirmed with costs against the plaintiff in error.

All the justices concurring.