No. 25,795.

THE BELOIT BUILDING COMPANY, J. F. ROBINSON, F. M. KAUL, W. E. KELLEY et al., *Appellees*, v. JOHN STALEY, as County Treasurer of Mitchell County, *Appellant*.

### SYLLABUS BY THE COURT.

TAXATION—*Payment—Checks on Insolvent Bank—Evidence.*  An action was brought by certain taxpayers to prevent the county treasurer from canceling tax receipts which he had previously issued for checks which, when presented, were not paid because the bank on which they were drawn was insolvent. The case was tried on an agreed statement of facts, which recited that, "Any and all material facts not herein agreed upon, if any there be, may be submitted by either of the parties on the hearing." *Held,* error to reject evidence offered by the defendant to show that the closing hour of the bank was four o'clock on Saturday, November 3, 1923; that about ten minutes thereafter the county treasurer tendered to the bank certain checks which had been received in payment for taxes; that the deposit

slip and checks deposited by him were placed in a wire basket for the pur-
pose of Monday's business; that the bank was insolvent and did not reopen;
that the deposit was not entered upon the books of the bank, no credit
was passed to the county treasurer on the bank's books, nor were the
checks charged against the accounts of the makers; that the receiver of
the bank returned the checks to the county treasurer with the statement
that the bank refused to honor or cash them or charge them to the accounts
of the makers, because the bank was closed and not open for business.

Appeal from Mitchell district court; WILLIAM R. MITCHELL, judge. Opinion
filed March 7, 1925. Reversed.

*R. M. Anderson, J. F. Finch,* county attorney, and *W. C. Perry,* all of
Beloit, for the appellant.
*Frank A. Lutz, Amzie E. Jordan,* and *I. D. Young,* all of Beloit, for the ap-
pellees.


The opinion of the court was delivered by

HOPKINS, J.: The action was one to prevent the county treas-
urer from canceling tax receipts which he had previously issued.
The plaintiffs prevailed, and defendant appeals.

An agreed statement of facts filed in the case contained the follow-
ing:

"The Union National Bank of Beloit . . . was, at the times . . .
mentioned, a corporation organized and existing under . . . the laws of
the United States . . . at Beloit, Kansas. That on Monday, the 5th day
of November, 1923, . . . the bank closed its doors, and on November 13,
1923, Dennis L. Noone was appointed receiver . . . by the comptroller
of the currency, . . . and . . . ever since has been . . . in charge
of said bank. That at all of the times . . . mentioned, the Union National
Bank . . . was . . . one of the duly and legally designated county
depositories for the depositing of county funds, and had given its bond cover-
ing such deposit as provided by law; that at all of the times herein mentioned
John Staley was and is the duly elected, qualified and acting county treasurer
of Mitchell county, . . . and that said county treasurer during said times
had moneys on deposit in said bank and was in possession of a pass book issued
to him by said bank. That at all of said times the Beloit Building Company
was and is a corporation organized and existing under and by virtue of the
laws of the state of Kansas . . . at Beloit. . . . That on the 3d day
of November and for some time prior thereto the said Beloit Building Com-
pany, a corporation, F. M. Kaul, W. E. Kelley, and J. F. Robinson, each had
on deposit in the said . . . bank sums of money respectively subject to
their respective checks in excess of the respective checks hereinafter described
and issued by them, and that on the dates hereinafter mentioned the said
parties issued their respective checks against their respective accounts in
said bank in favor of the said John Staley, as county treasurer . . . for the
respective taxes assessed against such respective parties, and the said county

Beloit Building Co. v. Staley.

treasurer issued to said' respective parties tax receipts as the consideration for the issuance of such checks. That on the 3d day of November, 1923, the said county treasurer delivered all of said checks to the said Union National Bank, and the said Bank, at said time, gave the said county treasurer credit therefor in a pass book which had theretofore been issued to said county treasurer by said bank; the total credit in said pass book made at said time being in the approximate sum of $2,430.72, and concurrently therewith the said bank issued and delivered to said county treasurer a deposit slip or ticket in the usual and ordinary form for the total amount of said checks. That a list of said checks so issued by said parties, together with the dates and amounts thereof, is as follows:

| Name. | Date. | Amount. |
|---|---|---|
| The Beloit Building Company | Nov. 2, 1923 | $283.04 |
| F. M. Kaul | Nov. 3, 1923 | 534.72 |
| J. F. Robinson | Nov. 3, 1923 | 583.22 |
| W. E. Kelley | Nov. 1, 1923 | 183.12 |

That said checks remained in the possession of said bank until the 30th day of November, 1923, at which time the said county treasurer obtained said checks from said receiver, and said checks ever since have been and now are in the physical possession of the said county treasurer. That a copy of said deposit slip or ticket is hereto attached, marked 'Exhibit A,' made a part hereof; that a transcript of said credit in said book is hereto attached, marked 'Exhibit B.' That on or about the 19th day of January, 1924, the said John Staley, as county treasurer, sent registered letters to each of the said parties, giving checks as above set out, stating in such letters that he would cancel the respective tax receipts issued in connection therewith, and demanding the return of the tax receipts delivered to such respective parties, stating in his said letters that he was so doing 'by reason of the said checks not being paid on presentation.' . . . It is specially agreed that any and all material facts not herein agreed upon, if any there be, may be submitted by either of the parties hereto to the above-named court or judge upon the hearing of this controversy."

On trial the defendant offered, in addition to the agreed statement of facts, to show collateral facts: among other things, that the plaintiffs, in some instances when they gave their checks, knew that the bank was in a failing condition; that they tendered checks on what was and has been later found to be a defunct bank; that the closing hour of the bank was four o'clock on Saturday, November 3; that about ten minutes thereafter, because of the stress of business, the county treasurer found the first opportunity to take the checks tendered to the bank; that a deposit slip was made up and received by the bank, and that the memorandum was likewise made in a pass book as to the amounts involved in the transaction; that the deposit slips and checks, in the usual course and custom of the bank, were placed in a wire basket on one side for the purpose of Monday's

business; that when Monday morning came the bank did not open for business; that the bank was closed on the order of the comptroller of the currency; that four o'clock Saturday was the last time business was transacted by the bank; that payment of the checks was refused and they were never paid; that no credit was passed to the account of the county treasurer on the books of the bank; that the checks were not charged against the accounts of the makers of the checks on the books of the bank; that the books of the bank were closed absolutely at four o'clock on November 3, 1923, and that the deposit in question was never entered upon the books of the bank; that some days after the bank had been taken charge of by the office of the comptroller of the currency the checks in question were returned to the county treasurer by the receiver or bank examiner in charge, with the statement that the bank refused to honor or cash the checks or charge them to the accounts of the makers, for the reason that the bank was closed and not open for business.

A motion by the plaintiffs for judgment upon the pleadings, agreed statement of facts and statement of counsel for the defendant was sustained. The court concluded, as a matter of law, that the issuance to the county treasurer of the deposit slip and entering upon the books of the county treasurer of a credit corresponding to the amount of the deposit constituted a payment of the checks in question drawn upon the bank which issued the deposit slips; that the county treasurer was therefore in error in attempting to cancel the tax receipts given to the plaintiffs for the checks in question.

We are of the opinion the court erred in rejecting the evidence offered by the defendant. While the entry in the pass book was *prima facie* evidence of the deposit, it was open to explanation. At the time the checks were left at the bank the bank had closed for business. The bank was insolvent and was never reopened. So far as the checks in question were concerned, the bank, being insolvent, could not place itself in the position of debtor with the county as creditor. No actual funds reached the hands of the county treasurer by virtue of the checks.

If the bank was insolvent during the business hours of Saturday its officers had no legal right to accept deposits (R. S. 9-119); and whether the bank was insolvent was a fact to be ascertained.

Had the deposit and the issuance of the deposit slip constituted payment, then the county treasurer would have been entitled to any dividends paid on account of the checks in question. The bank,

however, declined to charge the amount of the checks to the accounts of the makers and refused to give credit to the treasurer on the bank's books. The plaintiffs will draw whatever dividends are allowed on their accounts represented by the checks in question, although they claim to have paid it to the county treasurer. Under the circumstances related, the treasurer could have sustained an action to recover the checks. This was not·necessary. They appear to have been voluntarily returned to him, with the refusal to charge them on the books of the bank. Under the circumstances the treasurer had the right to cancel the tax receipts which had been issued in exchange for the checks.

A large number of authorities are cited, which neither time nor space will permit us to review. *Skinner v. Mitchell,* 108 Kan. 861, 197 Pac. 569, was a case in which Skinner and 874 others similarly situated sought to compel the county treasurer to credit them with their taxes on account of moneys paid to their agent and deposited in the Peoples State Bank of Coffeyville, a county depository. The bank failed before the money was actually received by the county treasurer. Some of the questions there considered were very similar to those in the instant case. Among other things, the court distinguished between controversies arising between individuals and between individuals and public officials. In the opinion it was said:

"The difference between the principles of law which apply to transactions between individuals and the county treasurer in this case is recognized in the case of *Barnard v. Mercer,* 54 Kan. 630, 39 Pac. 182. The defendant, who was the county treasurer, received a draft in payment of taxes sent for that purpose. The decision was rendered prior to the enactment of the statute requiring the treasurer to note on his books the cancellation of a tax receipt on account of nonpayment of a check or draft received in payment thereof. Nevertheless, the court held that taxes can only be paid in money unless the law specifically authorizes the treasurer to receive something else (*Judd v. Driver,* 1 Kan. 455), and that a check or draft given to a collector for the payment of taxes does not discharge the tax, unless the check or draft be in fact paid. (*Houghton v. Boston,* 159 Mass. 138; Black on Tax Titles, § 50.) In the opinion it was said: 'Under the authorities, the actual acceptance by the treasurer of a draft in payment of the taxes would not bind the public, if the draft afterwards proved to be worthless. The reason is that the treasurer is absolutely without power to discharge the rights of the public to the payment of the tax for anything else than money, or such warrants or public securities as the law specifically authorizes him to receive. The main difficulty in this case probably arises from the fact that the treasurer held the draft so long that if the transaction had been between individuals the loss occasioned by the failure of the Lincoln Bank would have fallen on him; but neither the taxpayer alone,

10—118 Kan.

nor with the aid of the treasurer, can impose on the public the risks incidént to private commercial paper.' (p. 632.) In the opinion in that case there are expressions indicating that it would be sufficient to bind the public if the money actually finds its way into a county depository to the credit of the defendant as county treasurer. That question, however, was not involved in the case and the remarks were made merely by way of illustration, and for reasons already suggested, are not a correct statement of the law. In 27 A. & E. Encycl. of L. it is said: 'The payment or tender of taxes must be absolute and unconditional. The taxpayer and the collector can make no arrangement whereby the taxpayer is discharged from liability for his taxes by anything except the absolute payment of them. In some states, however, the collector is permitted to satisfy the tax by payment to the treasurer and to enforce his claim for the payment so made against the person taxable. . . . The receipt of a check, draft or note, the marking of the taxes paid on the books, and the delivering of a receipt will not constitute payment nor conclude the public in a controversy between the taxpayer and the authorities. The check or draft given to a collector as payment does not discharge the lien unless such instrument be in fact paid.' (pp. 750, 751.) In 26 R. C. L. 376 it is said: 'A check is not payment of a tax, until the check is paid, even if received by the collector as payment, and if the collector neglects to present the check for payment for several days and in the meantime the bank on which it was drawn becomes insolvent, the tax may still be collected from the taxpayer.' (Citing *Koones v. District of Columbia,* 4 Mackey [D. C.] 339, 54 Am. Rep. 278.) The public is not bound by anything the treasurer does toward the acceptance of a check on a bank for the amount of the drawer's taxes which is, at most, only a conditional payment. (37 Cyc. 1164.)" (p. 871.)

The judgment is reversed and the cause remanded for further proceedings.

HARVEY, J. (dissenting): The checks were drawn upon the Union National Bank of Beloit by depositors of that bank, each of whom had money on deposit there subject to check ample in amount to take care of his check. They were made payable to the county treasurer and given to him in payment of taxes. The bank was a legally designated county depository. The county treasurer took them to that bank, presented them for payment, and received credit in his pass book. Also a deposit slip was made showing a credit to the county treasurer for the amount of the checks. That constituted a payment by the bank to the county treasurer. When the payee of a check presents it for payment to the bank on which it is drawn, the bank must either pay it or refuse to pay it. If the bank pays the amount of the check in money to the payee, neither the bank nor the payee can be heard to say the payment

was not made. The payee is not concerned with the question of what entries the bank makes upon its books. He cannot, in such a case, deny receiving payment, either as against the bank or as against the drawer of the check. If the payee, having an account at the bank, instead of receiving money upon the checks, asks for and receives credit upon his account there, the result is the same. This appeals to me as sound reasoning, and is supported by abundant authority. The receiver, later appointed for the bank, had no more authority to deny payment to the county treasurer than the bank had. Whether the bank or its receiver was indebted to plaintiff or to the county treasurer neither increased nor decreased its liabilities.