No. 28,317.

F. A. Saunder et al., *Appellees*, v. G. F. Best, as Sheriff of Ottawa County, et al., *Appellants*.

(272 Pac. 173.)

Opinion filed December 8, 1928.

*Lee Jackson* and *F. D. Boyce*, both of Minneapolis, for the appellants.

*C. W. Burch*, *B. I. Litowich* and *LaRue Royce*, all of Salina, for the appellees.

The opinion of the court was delivered by

Harvey, J.: This is an action by certain taxpayers on behalf of themselves and 120 others similarly situated (who will be spoken of herein as plaintiffs) to enjoin the sheriff and other county officials from levying on their property and collecting on certain tax warrants in the hands of the sheriff for the reason that the taxes had been paid. The court rendered judgment for plaintiffs, and the defendants have appealed.

The facts are not controverted, and may be briefly stated as follows: Plaintiffs reside in or near Ada, in Ottawa county. Each had property subject to taxation for the year 1926 upon which taxes were duly levied and assessed. The tax rolls were made up by the county clerk and delivered to the county treasurer November 1. The Ada State Bank had been duly designated by the county commissioners as a depositary of money for the county treasurer and had given its bond in the sum of $10,000 to secure such deposit. The treasurer had money belonging to the county on deposit in that bank. Although not specifically authorized to do so, it had been the practice of the county treasurer each year, for several years, for convenience in paying and collecting taxes, to make a list of the property subject to taxation in the vicinity of Ada and the amount of

taxes thereon, and a similar list pertaining to personal property, and send such lists to the Ada State Bank, where the taxpayers of that vicinity might pay their taxes. Other similar lists were sent to banks in other localities in the county. Soon after November 1, 1926, a copy of the tax roll of the property of taxpayers in the vicinity of Ada was made out by the county treasurer and sent to the Ada State Bank. There were also sent tax receipts in triplicate, each of which, with the knowledge and consent of the county clerk, bore a facsimile of his signature. Each of the plaintiffs paid to the Ada State Bank the amount of their respective taxes. The bank kept a taxpayers' account. This account showed the name of each plaintiff, the amount of tax paid, and the date of payment. On December 21, 1926, this account was closed, and the amount thereof, $6,648.58, was transferred and credited to the county treasurer's account.

In the court below the defendants offered no evidence, but their counsel stated: "We have admitted all through the case that money was paid into the Ada State Bank by the various plaintiffs in the amount of $6,648.58, and that the same was placed on the books of the bank to the credit of the county." A deposit slip, in duplicate, was made, showing such deposit to the credit of the county treasurer, and this deposit slip, together with the books and receipts showing who had paid the taxes and the property on which payment had been made, were sent by the Ada State Bank to the county treasurer, and were received by him on December 22.

Because of the rush of work in his office, and similar reports coming in from other banks, the county treasurer did not get time to go through this report and list the persons who had paid taxes until January 13, 1927, on which date the proper entries were made on his books, showing the money received and deposited to his account in the bank at Ada, the same was reported to the county clerk, where the proper entries were made, and the treasurer marked on his tax roll in the proper place opposite the entry of the amount of taxes charged to each of the persons who had so paid to the bank an entry that the taxes were paid, and the originals of receipts sent him by the bank were signed by the county treasurer. These signed receipts were retained by the treasurer in his office. On January 11 the county treasurer, anticipating, or having learned, that the amount deposited to his credit on December 21, added to the amount which he had on deposit there, would make his deposit larger than

the $10,000 bond given by the bank to secure its deposit, drew a check on the Ada State Bank for $3,000 which reached the bank and was paid on January 15, which reduced his deposit there to less than $10,000.

Under the terms by which it was designated a county depositary, the bank paid interest monthly at the rate of two per cent per annum on the daily balances. On December 31, 1926, it credited the treasurer's account with $11.39 and sent him a deposit slip therefor. This included interest on the $6,648.58 deposited to the credit of the treasurer December 21 from that date to the end of the month.

The Ada State Bank closed January 24, 1927, and was taken charge of by the bank commissioner and later liquidated. On March 3, 1927, after the bank was closed, the county treasurer erased the entries which he had made on his tax rolls, showing taxes paid by plaintiffs, attempted to disclaim credit for the deposit of December 21, 1926, to his account in the Ada State Bank, charged off the amount of that deposit on his books, or changed them to show that he had not received it, and caused corresponding entries to be made by the county clerk in his records. He refused to deliver to plaintiffs the signed receipts in his office showing that their taxes had been paid, and treated the taxes as not having been paid, and in due time issued tax warrants thereon, which tax warrants were delivered to the sheriff for levy and collection, when this action was brought.

The real question in this case is: Had plaintiffs paid their taxes to the county treasurer in conformity, or at least in substantial conformity, to our statutes pertaining to such payments?

Appellants argue that the county treasurer is the collector of taxes (R. S. 19-515); that taxes are payable in money only (*Judd v. Driver*, 1 Kan. 455); that the treasurer, in collecting taxes, acts in a governmental, not in a proprietary, capacity (*Seward v. Fisken*, 122 Wash. 225); that the treasurer had no legal authority to send duplicate tax rolls and blank tax receipts to the bank for convenience in collecting taxes; that any practice or custom in that regard is not binding on the county, and that the bank was necessarily the agent of the taxpayer to transmit for him his taxes to the county treasurer. (*Haynie v. Bryant & Parker*, 117 Okla. 138; *Skinner v. Mitchell*, 108 Kan. 861, 197 Pac. 569; *Scheafer v. McFarland*, 49 S. D. 605; 26 R. C. L. 377, and cases there cited.)

For the purposes of this case all these points may be conceded as being well taken. It may be conceded that the method used by plaintiffs in paying their taxes was irregular and not specifically authorized or provided for by our statutes. But the question still remains: Were the taxes in fact paid, in money, or its equivalent, and was such payment in fact received by the county treasurer? It was admitted "that money was paid into" the bank "by . . . plaintiffs . . . and placed on the books of the bank to the credit of the county." Now, the only other question is: Did the county treasurer receive it? It was paid in money to the bank, and placed in and credited to the account of the county treasurer, and he was given the deposit slip therefor. The bank paid interest to the county on the amount of such deposit in accordance with its agreement as a county depositary. The county treasurer drew on the account for the purpose and in an amount to keep his deposit in this bank within the sum for which it had given bond as a county depositary, and the check so drawn was paid. The county treasurer is required by statute (R. S. 19-530) to deposit daily all funds and moneys which come into his possession by virtue of his office, in his name as treasurer, in some bank located in the county and designated by the board of county commissioners as a county depositary. The receipt of the money was recognized by the treasurer by his drawing on the account, by his signing of the original tax receipts, by the entries made in his books, and by the entries he caused to be made in the books of the county clerk. We think the evidence conclusive that the money paid by plaintiffs was received by the county treasurer.

This is not a case in which the county treasurer was given by a taxpayer a check or draft which was not paid on presentation, as in *Barnard v. Mercer*, 54 Kan. 630, 39 Pac. 182, and allied cases collected in 44 A. L. R. 1234. Neither is it a case where checks were given on an insolvent bank, as in *Beloit Building Co. v. Staley*, 118 Kan. 141, 234 Pac. 57. Here there is no intimation in the evidence that the Ada State Bank was insolvent, or in failing condition, on December 21, 1926, nor at any time prior to its closing its doors January 24, 1927.

Appellants cite and rely upon *Skinner v. Mitchell*, supra. There is at least one outstanding material difference between that case and the one before us. In that case the bank was not a county depositary. This is clear from the opinion in the case, also from

*Brogan v. Kriepe, Receiver,* 116 Kan. 506, 227 Pac. 261, involving the same moneys. In that case the taxes had been collected by a real estate firm, which charged the taxpayers a commission, and by this firm deposited to the credit of the county treasurer in a bank in which he was not authorized to have on deposit county money. When he learned of that he promptly drew on the bank for the amount of the deposit. His draft was not paid and the bank failed immediately. There it was clear the money never reached the county treasurer—even his effort to get it was fruitless. No such situation exists in the case before us.

We have examined all authorities cited by counsel. We deem it unnecessary to further analyze them. The judgment of the court below is affirmed.

BURCH, J., not sitting.