No. 34,244

THE RICHARDS-CONOVER HARDWARE COMPANY et al., *Appellees*, v. GEORGE SHARP, Sheriff of Seward County, et al., *Appellants*.

(95 P. 2d 360)

Opinion filed November 10, 1939.

*H. A. Gaskill*, of Liberal, for the appellants.

*Fred Hinkle*, of Wichita, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This was an action to enjoin the sheriff from selling certain personal property under alias personal-property tax warrants. The trial court held the alias tax warrants void and granted the injunction. The defendants have appealed.

The facts, either stipulated or not seriously controverted, may be stated as follows: The Southwestern Hardware Company, a corporation, with its place of business in Liberal, Seward county, and hereinafter called the hardware company, conducted a hardware business in Liberal for many years. It failed to pay its personal-property tax for the years 1932, 1933, 1934, 1935 and 1936. For each of those years the county treasurer issued a tax warrant for the unpaid taxes for that year and delivered it to the sheriff, who returned the tax warrant with the taxes uncollected. Also, the hardware company had failed to pay its taxes for 1937, but a tax warrant for the collection of those taxes was not issued by the treasurer until after the date of the contract soon to be mentioned.

On July 11, 1938, the hardware company contracted to sell all its stock of goods, open accounts, notes, store fixtures, furniture, equipment, good will and cash on deposit in the bank to the Richards-Conover Hardware Company, a corporation, and the Colladay Hardware Company, a corporation. (These parties later became the plaintiffs in this action and are the appellees here.) The hardware company then "had a stock of merchandise and fixtures of the approximate value of at least $2,500." The contract, among other things, provided that this was a sale which would come within the bulk-sales law of this state, and to comply with the law it was necessary that the seller, by its president, execute an affidavit listing all its creditors. Such an affidavit was made by R. A. Evans, president of the hardware company, and among the creditors mentioned in the list of creditors was "Seward county." This affidavit and list of creditors was attached to the contract. The contract contained the following paragraph:

"First party covenants that the property hereinbefore set over unto second parties is free and clear of all liens and encumbrances except certain personal-property taxes, which have been assessed against the property of the corporation, *and it is agreed that second parties shall pay said taxes, except a share thereof proportionate to the amount assessed upon the property set aside to Kittie C. St. Aubyn by bill of sale as hereinbefore stated.*" (Italicized portion later deleted.)

On the date this contract was made Mr. Evans, president of the hardware company and acting for it, stated to Mr. Garrison, who was representing the purchaser, that he did not know the amount of the personal-property taxes, but thought it was somewhere around $1,000 or $1,100. No effort was made on that date to ascertain the correct amount of such taxes. This contract as written was executed July 11, 1938, by the hardware company by its president and secretary, but Mr. Garrison, acting for the purchasers, was not authorized to sign the contract in their names and took it to his home at Wichita to submit to the purchasers. On July 15 he wrote the county treasurer to ascertain the amount of the taxes owed the county by the hardware company. This letter was not registered and does not purport to be a notice under the bulk-sales law. The treasurer's reply is not in the record, but from it the purchasers learned that the unpaid taxes amounted to about $2,100. As a result of this an effort was then made, at the suggestion of the purchasers, by Mr. Charles Vance, an attorney who represented the hardware company, to have the taxes compromised. Mr. Vance took this up with the board of county commissioners of Seward county, who refused to make any compromise of the taxes. On September 3, 1938, the contract of the date of July 11, 1938, between the hardware company and the purchasers was by agreement amended by deleting the italicized portion of the paragraph above quoted. This was done by drawing a line through the deleted words, and on that date the purchasers went into possession of the stock of merchandise and placed their representative, a Mr. Dee Collins, in charge. On July 11, when the contract was first drawn and executed on behalf of the hardware company, the store was closed for business and for invoicing the stock, and it was not opened for business until Mr. Collins was placed in charge on September 3.

On September 7, 1938, the county treasurer of Seward county issued alias personal-property tax warrants, one for each of the years 1932 to 1936, inclusive. He also issued a tax warrant for the personal-property taxes for 1937 and one for the estimated amount of the personal-property tax for 1938. These seven warrants were delivered to the sheriff. On September 9, 1938, the sheriff took the warrants and went to the store, then in charge of Mr. Collins, and levied the warrants upon the stock of merchandise and fixtures. Mr. Collins, acting for the purchasers, offered to pay the sheriff the amount of the tax warrants for the years 1937 and 1938, but de-

clined to pay the amount of the tax warrants for the previous years. The sheriff declined to accept the tender.

The petition in this action, filed September 16, 1938, recited the pertinent facts hereinbefore stated, conceded plaintiffs were liable for the taxes shown by the tax warrants for the years 1937 and 1938, and tendered into court a sum sufficient to pay those taxes; alleged that the alias tax warrants for the years 1932 and 1936, inclusive, were void, and prayed that they be put into possession of the property then held by the sheriff upon the payment of the taxes for the years 1937 and 1938. The answer admitted the sheriff had levied upon the stock of goods and fixtures and intended to sell the same under the tax warrants for the years 1932 to 1938, inclusive; alleged that in purchasing the property plaintiffs had agreed to pay the taxes and were estopped from contesting them; alleged plaintiffs and the hardware company did not comply with the bulk-sales law, being G. S. 1935, 58-101 to 58-104, and that by reason thereof the sale was void as to Seward county; alleged that the warrants were valid in all respects, and asked that the injunction be denied. The reply was a general denial.

The trial court made findings of fact that the written contract of sale between the hardware company and plaintiffs did not bind the plaintiffs to pay past-due taxes, and that there was no oral agreement between the parties to that effect, and that the plaintiffs, as the purchasers of the property, did not comply with the bulk-sales law as far as Seward county was concerned.

As conclusions of law the court held that the alias warrants issued by the county treasurer, and levied upon the stock and fixtures of the hardware company for the taxes for the years 1932 to 1936, inclusive, were not issued pursuant to any statute and are therefore utterly void; that the sale of the merchandise and fixtures was void as to Seward county and the levies thereon for the 1937 and 1938 taxes are valid, and that plaintiff should recover possession of the property then held by the sheriff upon payment of the taxes for the years 1937 and 1938, together with proper cost, interest, and charges thereon. The decree was in harmony with these conclusions of law.

In this court two questions are argued: *First,* the validity of the alias tax warrants issued by the county treasurer for the taxes for the years 1932 to 1936, inclusive. The specific portions of our 1935 General Statutes cited as pertaining to this question may be summarized or quoted from as follows:

Section 79-2101 provides for the county treasurer giving certain notices to a taxpayer of unpaid personal-property taxes, and "should such taxes remain unpaid for a period of thirty days after mailing such last-mentioned notice the county treasurer shall forthwith issue a warrant under his hand directed to the sheriff of the county, commanding him to levy the amount of such unpaid taxes and the penalty thereon, together with his fees for collecting the same, of the goods and chattels of the person to whom such taxes were assessed; thereupon said sheriff shall proceed to collect said taxes the same as upon his execution, and after collecting the said taxes pay the same to the county treasurer, and return such warrants within sixty days from the date thereof. . . ."

Section 79-2103 makes it the duty of the several sheriffs in the state, in making their return of delinquent tax warrants to the treasurers of their respective counties, "to note in their return the county to which any such delinquent taxpayer may have removed or resides, with the date of his removal, if he shall be able to ascertain such fact; and it is hereby made his duty to make diligent inquiry therefor."

Section 79-2104 makes it the duty of the county treasurer, upon receiving a tax warrant "returned as provided in the preceding section, to issue an alias tax warrant, directed to the sheriff of any county in this state into which any such taxpayer may have removed or may reside, or in which his personal property may be found, who shall proceed to collect said taxes the same as upon execution, together with his costs upon the same, and after collecting the said taxes to forward the same to the treasurer of the county who issued said warrant, together with the warrant, and his return endorsed thereon: *Provided*, That if said warrant be returned unsatisfied, in whole or in part, the county treasurer may issue further alias tax warrants to the sheriff of his county or to the sheriff of any county in this state in which the taxpayer has personal property."

Section 79-2105 provides that on the return "of any unsatisfied tax warrant" by the sheriff to the county treasurer of any county, it shall be the duty of the county treasurer, "if he believe such delinquent taxpayer has property which cannot be reached by said tax warrant," to file with the clerk of the district court an abstract of the amount of taxes, penalty and costs, "accompanied by the last tax warrant," and the clerk shall then enter the amount on his judgment docket, and the unpaid tax shall become a lien upon real estate,

"in the same manner as a judgment, and a tax warrant may thereupon be issued by said clerk, which shall have the same force as an execution, and such real estate shall be sold without appraisement."

Section 79-2107 provides that the warrants returned by the sheriff shall be endorsed with the date of service, date of collection, the amount collected, and if no property is found, so state; "and if any treasurer or sheriff fail to issue or serve and return the warrants as provided by this act, such treasurer or sheriff shall be held liable for the amount of tax upon which warrants have so failed to be issued, served or returned."

On behalf of appellees and in support of the judgment of the trial court it is argued that the only circumstance specifically provided for in the statute for the county treasurer to issue alias personal-property tax warrants is when the sheriff, in an effort to serve the tax warrant first issued by the county treasurer, learns that the taxpayer has moved to or resides in some other county in the state and reports that fact on his return; then the county treasurer may issue a tax warrant to the other county, and if that is returned unsatisfied, may then issue alias tax warrants to the sheriff either of his own county or any other county in the state where the taxpayer resides or has property. It is argued that since this was not done in this case there was no authority for the county treasurer to issue the alias tax warrants. This specific question was before the court in *Lumber Co. v. Chandler*, 90 Kan. 561, 135 Pac. 601. There the court held adverse to this view. There the W. N. Certain Lumber Company owned a stock of lumber in Miami county and listed the same for taxation. Thereafter and before any tax warrant was issued that lumber company sold the stock of lumber in bulk without retaining any portion thereof and without paying the taxes. In due time the county treasurer issued a general tax warrant, which was returned by the sheriff unsatisfied with a statement that the property had been sold in bulk to one person and without retaining any part thereof, and that the stock of lumber was still in Miami county. Thereupon the treasurer issued an alias tax warrant, which the sheriff levied on the stock of lumber. The then owner brought an action to enjoin the sale. Plaintiff's contention was that the W. N. Certain Lumber Company owned other lumberyards in other counties in the state, and that the second, or alias, tax warrant should have been issued to the sheriffs of those counties, and that the county treasurer of Miami county had no power or authority in law to issue an alias tax warrant. The court said:

"This theory might impose upon county officers the onerous burden of investigating in every county of the state and accurately determining whether the taxpayer had property in any one of them before an alias tax warrant could be legally issued against the property assessed and still in the county. This would be liable to involve more expense than the amount of the tax to be collected, and cannot be the intent of the law." (p. 563.)

In that case a temporary injunction had been set aside by the trial court, and this was affirmed on appeal. Appellees call attention to G. S. 1935, 79-2105, and argue that it was the duty of the treasurer, upon the return of an unsatisfied tax warrant, to file with the clerk of the district court an abstract of the amount of the taxes, penalties and costs, "accompanied by the last tax warrant," and that the clerk of the court should then enter the amount on his judgment docket, and might thereafter issue a tax warrant, which would have the same force as an execution. It will be noted that it is the duty of the county treasurer to do this "if he believe such delinquent taxpayer has property which cannot be reached by said tax warrant." Since the tax warrant would authorize a levy on any personal property of the taxpayer, this necessarily means that if the treasurer thinks the taxpayer has real property which could be reached for the payment of the taxes by a tax warrant issued by the clerk of the district court it becomes his duty to make and file such certificate. This section does not require the treasurer to certify the taxes to the clerk of the district court if the treasurer thinks that, notwithstanding the return of the tax warrant, personal property might be reached and levied upon under an alias tax warrant. If the amount of the tax is certified to the clerk of the district court it must be "accompanied by the last tax warrant." This indicates a legislative concept that the treasurer might have issued successive tax warrants.

An alias subpoena, execution, warrant, or writ, is simply one issued after the first has been returned without having accomplished its purpose. (3 Black. 283; 4 Black. 319; 2 C. J. 1033; 3 C. J. S. 514; see, also, Bouv. L. D., where it is said, "It is used of all species of writs.") The general rule is that one who has authority to issue such an instrument has authority to issue an alias if the first is returned without having accomplished its purpose. This general rule is not abrogated by a statutory provision for issuing an alias execution or writ under special circumstances, such a statute normally being regarded as supplemental to the general power to issue such

alias instruments rather than a limitation upon such general power. (23 C. J. 392; 10 R. C. L. 1246; 21 Am. Jur. 44.)

We agree with counsel that most of the decisions from other jurisdictions are not helpful because of the variety of statutes in the different states, but a few cases are worthy of note. In *Baker v. Lee*, 41 Hun (48 N. Y. Sup. Ct.) 591, the action was for damages for taking and selling plaintiff's wagon under a tax warrant. It seems that the issuing authority had written on the warrant, "Renewed for ten days," and later added these words, "Renewed for twenty days from the time it run out." The levy was made under this last extended time. It was contended there was no authority for such extension. The court agreed with that contention, but held that this last renewal was to be regarded as the issuing of a new warrant of the same force and effect in all respects as the original warrant. Under slightly different circumstances the holding on the point here involved was to the same effect in *Bird v. Perkins*, 33 Mich. 28; *Eddy v. Wilson*, 43 Vt. 362; *Benton v. Merrill*, 68 N. H. 369, 39 Atl. 257; *Bartlett v. Tufts*, 241 Mass. 96, 134 N. E. 630; and *The People v. James*, 328 Ill. 262, 159 N. E. 194; while in *Briggs v. Carr*, 27 R. I. 477, 63 Atl. 487, where the statute provided that all warrants for the collection of taxes should continue in force until the whole tax was collected, it was held that the treasurer was not authorized to issue the second warrant. Naturally, in that case the levy could have been made under the first one.

In *Blain v. Irby*, 25 Kan. 499, where the sheriff had levied on property under a tax warrant, it was held that the sale was not void because made after the return day. In *Bank of Garnett v. Ferris*, 55 Kan. 120, 39 Pac. 1042, the personal-property tax warrants for the years 1890, 1891, 1892 and 1893 were issued on June 30, 1894. The sheriff was proceeding to levy upon and sell property under the warrants when he was enjoined by the taxpayer on the ground, among others, that the treasurer had no authority to issue them at the time they were issued. The injunction was denied, and on this point the court held:

"The collection of taxes cannot be enjoined because of the failure of the treasurer to issue the tax warrant for the collection of such taxes at the particular time mentioned in the statute." (Syl. ¶ 2.)

In *Saunder v. Best*, 127 Kan. 135, 272 Pac. 173, the treasurer, without any statutory authority to do so, used a plan of collecting

taxes through local banks in various parts of the county. Where the taxes were actually paid by the taxpayers and received by the county the payment was held to be a valid one.

The county treasurer, under G. S. 1935, 19-515, by virtue of his office, is made the collector of taxes for the county, and he is required to perform such duties in that regard as are prescribed by law; and by G. S. 1935, 79-2503, it is provided that irregularities in performing the duties of any office in connection with the assessment and collection of taxes shall not invalidate the proceeding.

When the tax warrants for the years 1932 to 1936 were returned with the taxes uncollected the taxes were not paid by reason of that fact; the taxpayer still owed the taxes. If the treasurer had reason to think the taxpayer had property which could not be reached by a tax warrant it was his duty to certify the taxes, accompanied by the last tax warrant, to the clerk of the district court. There is no showing in this record that the hardware company owned any real estate, or that the treasurer at the time those warrants were returned thought the taxpayer had property in the county which could not be reached by tax warrants. With the duty imposed upon the treasurer to collect taxes, and with the warrants first issued returned uncollected, and with the taxes not paid, if the treasurer thought the taxpayer had property which could be reached by a tax warrant it was not inconsistent with his duties to issue an alias tax warrant, and no statute prohibits him from doing so. We feel forced to conclude that the trial court erred in holding the tax warrants to be absolutely void; indeed, it is our view that the treasurer had authority to issue them, and that they were valid.

This leads to the discussion of the *second* question argued—the effect of the failure to comply with the bulk-sales act (G. S. 1935, 58-101 to 58-104). The trial court found that the purchasers (plaintiffs here) had not complied with the bulk-sales act in purchasing the property, and no appeal has been taken from that ruling. But appellees argue that this has no application, contending that the county was not a "creditor" of the hardware company within the meaning of the bulk-sales law. With that contention we cannot agree. Early in the history of that act in this state it was held in *Burnett v. Trimmell*, 103 Kan. 130, 173 Pac. 6:

"The term 'creditors' as used in the act is not confined to those who have sold merchandise to the vendor, but covers creditors generally." (Syl. ¶ 3.)

This case was cited with approval in *McKnight-Keaton Grocery*

*Co. v. McFadden* (Mo. App.), 107 S. W. 2d 176. Under a statute identical with our own the supreme court of North Dakota in *Lindstrom v. Spicher*, 53 N. D. 195, 205 N. W. 231, 41 A. L. R. 968, held:

"Where taxes assessed against a stock of merchandise are past due and unpaid, on a sale in bulk of such merchandise the county to which such taxes are payable is a creditor within the meaning of that term as used in the bulk-sales act (§§ 7224-7227 inclusive, Comp. Laws, 1913), and entitled to the protection and benefits afforded by the act."

The same or similar acts have been passed in many states. In some of the states the statute and the terms used therein have been given a narrow construction, but in this state the opposite view has been taken—the statute has been construed liberally (*Saunders v. Graff*, 103 Kan. 261, 262, 173 Pac. 413), and held to apply to all classes of creditors of the seller. Appellee argues that to be a creditor one must have a debt due him upon which an action can be maintained. That definition is too narrow. Bouvier defines the words as, "he who has a right to require the fulfillment of an obligation or contract." Here the hardware company owed its taxes. Under any view argued the county had a right to enforce collection. As the contract between the parties was originally drawn that was recognized, and it contained a clause which bound the purchasers to pay these taxes. Later, when it was learned that the taxes were more than was at first thought, the clause obligating the buyer to pay the taxes was deleted from the contract. We think this had no effect on whether the county was a creditor of the hardware company. The hardware company still owed those taxes. The county had machinery it could put in operation for their collection. Mr. Evans, president of the hardware company, testified on the trial of this case that he wanted the taxes paid. The trial court found that the purchasers did not specifically agree to pay the taxes either in the written agreement as finally executed or orally with the purchasers. We regard that fact as having no specific bearing. The county, being a creditor of the hardware company, and the bulk-sales law not having been complied with as applied to the county, it could follow the goods sold in the hands of the purchasers, and this it did within seven days after the contract of sale was finally agreed upon, September 3, 1938, if the county, under the circumstances, was required to act within that time.

Therefore, we are not concerned with whether or not the taxes were a lien upon the goods sold at the time the contract was consummated and the purchasers took possession. Since the purchasers

did not comply with the bulk-sales law, so far as the county was concerned, and since the county was a creditor of the hardware company within the meaning of the bulk-sales law, it was within its rights in following the property into the possession of the purchasers.

This was an action in injunction; equitable principles apply to it. (*Gulf Railroad Co. v. Morris*, 7 Kan. 210.) It cannot be maintained to prevent the collection of a valid tax because of mere irregularities in the acts of county officers. (*Dutton v. National Bank*, 53 Kan. 440, 36 Pac. 719; *Bank of Garnett v. Ferris*, supra. See, also, *Witschy v. Seaman*, 83 Kan. 634, 112 Pac. 739, and *Kasparek v. Throop*, 98 Kan. 551, 158 Pac. 1114.) We find no equities in favor of plaintiffs that would justify an affirmance of the judgment of the trial court.

We have examined all the authorities cited by counsel, and many more, but deem it unnecessary to analyze and distinguish them further. We find nothing in any of them which requires a conclusion different from that which we have reached. From what has been said it necessarily follows that the judgment appealed from should be reversed, with directions to deny the injunction. It is so ordered.